SCOFES ET AL. V. HELMAR ET AL.

[No. 25,302. Filed November 21, 1933.]

*William J. Whinery,* for appellants.

*William J. McAleer, Francis J. Dorsey, Gerald A. Gillett,* and *James J. Clark,* for appellees.

TREANOR, J.—This is an appeal from an interlocutory order refusing to grant a temporary injunction forbidding appellees to do certain acts complained of in picketing appellants' restaurant at Hammond. Upon perfecting this appeal appellants made application to this court

for an order forbidding appellees to continue doing the acts complained of pending this appeal and upon sufficient showing being made a temporary injunction was granted pending appeal.

Plaintiffs' complaint alleged, and the evidence showed that appellees Helmar and Parlee, as representatives of a restaurant employees' union undertook to organize the employees of restaurants in the city of Hammond and asked appellants to sign a contract whereby appellants would agree to employ only union members upon the terms set out in the contract. Appellants refused to sign such contract whereupon a strike was called and two of appellants' employees who had joined the union at appellees' solicitation left their employment. Appellees caused appellants' place of business to be picketed by members of the union who carried placards on which were printed in large letters the words "This restaurant is Unfair to Organized Labor;" that such picketing was conducted both at the front and the rear of plaintiffs' premises and that as a result appellants lost the patronage of many former customers; and drivers of trucks who delivered supplies to appellants' restaurant and who were members of unions refused to deal with or continue to deliver such supplies to appellants while picketing was being conducted.

Appellants' complaint contained numerous allegations to the effect that in calling the strike and instituting the picket appellees acted maliciously and associated, confederated, combined, and conspired together to unlawfully and wrongfully create a boycott, both primary and secondary, against appellants' business, and that appellees have committed such acts of picketing for the purpose of intimidating appellants' employees and for the purpose of intimidating, embarrassing, and harassing appellants' patrons, and that by such acts appellees have

intimidated and coerced appellants' patrons and prospective customers into withholding their patronage and are intimidating and frightening away appellants' patrons; that appellants have thus far prevented violence but that by reason of the sneers, jeers, epithets, slurs, and menacing attitude of appellees towards appellants' employees violence is likely to occur.

Appellants contend that under §1225, Burns Ann. Ind. St. 1926 (§1062, Baldwin's Ind. Ann. Stat. 1934), Acts 1881, Sp. Sess., p. 240, ch. 38, §178, an injunction should be granted if a prima facie case is stated in the complaint showing that plaintiffs are entitled to the relief demanded, and that since their complaint states such a prima facie case the trial court erred in refusing to issue the injunction. It appears, however, that notice was given, as provided in §1227, Burns, etc., 1926 (§1064, Baldwin's 1934), Acts 1881, *supra*, §180, and that appellees appeared on the day named and the cause was then submitted; that the trial court considered appellants' verified application and heard the evidence of witnesses for appellants and appellees and thereafter refused to grant a temporary injunction. This appeal was taken from the order made after notice and hearing.

In their assignment of errors appellants urge that the trial court erred in refusing to grant the temporary injunction, contending that the decision of the trial court was not sustained by sufficient evidence, was contrary to law, and that it is violative of the 14th amendment to the Constitution of the United States and Art. I, §12 of the Constitution of Indiana.

In many respects there was no conflict in the evidence. The evidence of both parties to the cause establishes that from one to five persons were constantly picketing in front of appellants' place of business. That the picket-

ing was being conducted under appellees' direction; that the immediate purpose in picketing was to cause appellants' employees to quit their employment and to cause appellants' patrons to withhold their patronage and to render more difficult the obtaining of supplies with which to conduct appellants' business, is apparent from the evidence introduced by appellants and appellees. That the receipts from their business were reduced $50 to $65 per day was the result experienced by appellants and desired by appellees in order to attain what, it is agreed, was the ultimate objects of the picketing, to cause appellants to agree to employ only union members and to pay the rate of compensation and conform to the working conditions adopted by the union.

We are of the opinion that the foregoing objects legally justify picketing, if lawfully conducted, even though such picketing may cause pecuniary loss to the business picketed. *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 75 N. E. 477; *Thomas* v. *City of Indianapolis* (1924), 195 Ind. 440, 145 N. E. 550; *American Steel Foundaries* v. *Tri-City Central Trades Council* (1921), 257 U. S. 184, 42 S. Ct. 72; *Stillwell Theatre, Inc.* v. *Kaplan* (1932), 259 N. Y. 405, 182 N. E. 63. It is now generally recognized that employees have a legitimate de facto interest in collective action for the purpose of improving their economic situation; and it cannot be questioned seriously that beneficial results to society, as well as to employees individually and as a class have come from an assertion of the collective economic force of employees. The law recognized this de facto interest to the extent of an immunity from legal responsibility for financial loss to employers which results from strikes and picketing, when such strikes and picketing are conducted in a lawful manner. We may evolve eventually

agencies that will adequately protect the interests which employees are now required to protect through collective economic force but "so long as the economic order is grounded upon a premise of strife between producer and consumer, between labor and capital, the battle should not be rendered one-sided by perpetuating the advantage which society, combined in the guise of capital, enjoys as a result of an accidental oversupply of labor when the power to influence public opinion is denied workmen." Harper on Torts, §233. We think the present state of the law in Indiana respecting picketing is substantially in accord with the following judicial expressions:

"The court of appeals has for many years been disposed to leave the parties to peaceful labor disputes unmolested when economic rather than legal questions were involved. The employer, if threatened in his business life by the violence of the unions or by other wrongful acts might have the aid of the court to preserve himself from damage threatened by recourse to unlawful means, but the right of workmen to organize to better their conditions has been fully recognized. The fact that such action may result in incidental injury to the employer does not in itself constitute a justification for issuing an injunction against such acts. The interests of capital and labor are at times inimical and the courts may not decide controversies between the parties so long as neither resorts to violence, deceit or misrepresentation to bring about the desired results." *Stillwell Theatre, Inc.* v. *Kaplan, supra.*

"Economic organization today is not based on the single shop. Unions believe that wages may be increased, collective bargaining maintained only if union conditions prevail, not in some single factory, but generally. That they may prevail it may call a strike and picket the premises of an employer with the intent of inducing him to employ only union labor. And it may adopt either method separately. Picketing without a strike is no more unlawful

than a strike without picketing. Both are based upon a lawful purpose. Resulting injury is incidental and must be endured." *Exchange Bakery & Restaurant, Inc.* v. *Rifkin* (1927), 245 N. Y. 260, 157 N. E. 130.

"Whether picketing is lawful or unlawful, depends in each particular case upon the conduct of the pickets themselves. The fact that they are serving under appointment and instructions from their union adds nothing to their rights and privileges as affecting third persons. Under no circumstances have pickets the right to employ force, menace, or intimidation of any kind in their efforts to induce nonstriking workmen to quit, or to prevent those about to take the strikers' places to refrain from doing so; neither have they the right, as pickets or otherwise, to assemble about the working place in such numbers or in such manner as to impress workmen employed, or contemplating employment, with fear and intimidation.

"It is, however, generally conceded in this country and in England that workmen, when free from contract obligations, may not only singly and in combination cease to work for any employer, but may also, as a means of accomplishing a legitimate purpose, use all lawful and peaceful means to induce others to quit or refuse employment. The law, having granted workmen the right to strike to secure better conditions from their employers, grants them also the use of those means and agencies, not coincident with the rights of others, that are necessary to make the strike effective. This embraces the right to support their contest by argument, persuasion, and such favors and accommodations as they have within their control. The law will not deprive endeavor and energy of their just reward, when exercised for a legitimate purpose and in a legitimate manner. So, in a contest between employees and employers on the one hand to secure higher wages, and on the other to resist it, arguments and persuasion to win support and cooperation from others are proper to either side, provided they are of a character to leave the persons solicited feeling at liberty to comply or not, as they please. Likewise a union may appoint pickets or a committee to visit the vicinity of factories

for the purpose of taking notice of the persons employed, and to secure, if it can be done by lawful means, their names and places of residence for the purpose of peaceful visitation. 1 Eddy, Com. §537; *Perkins, Campbell & Co.* v. *Rogg* (1892), 28 Wkly. Law Bul. 32." *Karges Furniture Co.* v. *Amalgamated, etc., Union, supra.*

"Although the decisions of the courts of this country are not in accord on the question, the majority hold that, in the absence of any legislation upon the subject, so-called "peaceful picketing" is not unlawful, but that where it is accompanied by force, intimidation or coercion, it is unlawful and will be enjoined by a court in the exercise of its equitable powers." *Thomas* v. *City of Indianapolis, supra.*

That appellants have sustained and will continue to sustain loss of patronage and ensuing pecuniary loss if the picketing is continued is not sufficient to ■ entitle them to injunctive relief under §1225, *supra,* which reads, in part, as follows:

"When it appears . . . that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce great injury to the plaintiff, or when, during the litigation, it appears that the defendant is doing or threatens, or is about to do, or is procuring or suffering some act to be done, *in violation of the plaintiff's rights,* respecting the subject of the action, and tending to render the judgment ineffectual; . . . an injunction may be granted to restrain such act or proceedings until the further order of court . . ." (Our italics.)

It must also appear that the defendant is not entitled to perform the acts complained of or that their performance constitutes an invasion of plaintiff's rights; otherwise the plaintiff has not been injured but it is an instance of *damnum absque injuria. Karges Furniture Co.* v. *Amalgamated, etc., Union, supra; S. A.*

*Clark Lunch Co.* v. *Cleveland, etc., Local 106* (1926), 22 Ohio App. 265, 154 N. E. 363.[1]

The limitation placed upon picketing is that it must be free from unlawful acts. If accompanied by acts or threats of force, violence, fraud, and misrepresentation which impede access to and passage to and from, and interfere with, an employer's premises and business by his employees, customers and persons with whom he deals, thereby resulting in loss to him, or invasion of his rights, an injunction will be granted.[2] The injunction, in such cases, will issue not only against such unlawful conduct, but if it appears that the picketing has consisted, and is likely to continue to consist, of similar unlawful conduct, an injunction may prohibit all picketing.[3]

*Note 1.* "It is shown that the acts complained of are causing the plaintiff a substantial loss in its business and profits. This fact furnishes no basis for judicial interference for the plaintiff had no vested property right in the business so lost to it. This is so for the reason that, while it had a legal right to determine its course of action, it must be held to have considered in that connection the influence of union labor on the public, and the benefit of its support and patronage. These are factors in the situation it was bound to consider. It chose to reject union labor and to employ nonunion labor at lower wages and longer hours of service. It was bound to know that it could not legally prevent publicity in respect to its action. Whatever financial loss it now suffers is therefore due to causes of its own making, and within its control, which it must be held to have anticipated." *S. A. Clark Lunch Co.* v. *Cleveland, etc.,* 106, *supra.*

*Note 2.* "Even if the end sought is lawful, the means used must be also. 'Picketing' connotes no evil. It may not be accompanied, however, by violence, trespass, threats or intimidation express or implied. No crowds may be collected on or near the employer's property. The free entrance of strangers, customers or employees may not be impeded. There may be no threats—no statements oral or written, false in fact, yet tending to injure the employer's business. We here make no attempt to enumerate all the acts that might make picketing illegal. Doubtless there are others. When the situation in a particular case comes to be reviewed by the courts there will be no difficulty in drawing the line between acts permissible and acts forbidden." *Exchange Bakery & Restaurant Inc.* v. *Rifkin, supra.* See also *Karges Furniture Co.* v. *Amalgamated, etc., Union, supra; American Steel Foundries* v. *Tri-City, etc., Council, supra; Truax* v. *Corrigan* (1921), 257 U. S. 312.

*Note 3.* "It is quite true that where unlawful picketing has been continued; where violence and intimidation have been used and

The trial court found generally for appellees and its judgment cannot be reversed as not being sustained by sufficient evidence unless we can say that there is no evidence to support a finding that the picketing here complained of was free, and reasonably likely to remain free, from acts and threats of force, violence, fraud, and misrepresentation tending to interfere with appellants' business. A conflict is found when we undertake to determine that question from the record. Evidence was introduced on behalf of appellants to the effect that two employees who continued to work for appellants during the picketing were called "dirty lousy scabs" on several occasions by one of the picketers and that on one occasion a picketer "jumped up at" one of the employees and "had a notion to hit her." Appellants also introduced evidence to the effect that the pickets stopped customers and talked to them, that thereafter some of the customers would go away whereas others continued on their way to appellants' restaurant and continued to patronize appellants. It does not appear that any acts or threats of force or violence or any improper, false, or fraudulent language was used toward such customers except that on one occasion a picket "grabbed" a customer by the arm and talked to him whereupon, he testified, he "of course didn't go in after that." It does not appear whether the witness, who was himself a union member, withheld his patronage because of any improper conduct of the picket or because of learning of appellants' attitude toward the union. Such conduct on the part of pickets may amount to threats or acts of force or violence sufficient to render unlawful

where misstatements as to employers' business have been distributed, a broad injunction prohibiting all picketing may be granted. The course of conduct of strikers has been such as to indicate the danger of injury to property if any picketing whatever is allowed." *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin, supra.*

the picketing which it accompanies.[4] On the other hand, the existence of picketing, in itself peaceful, may afford the occasion for irresponsible individuals, in isolated instances, to be guilty of misconduct not likely to be repeated which neither influences public opinion in favor of the union nor exerts any pressure upon the employer to induce him to accept the union's terms. Such conduct is usually decried by both the union and the employer and should afford no basis for the issuance of an injunction against lawful picketing.[5]

However, whether the picketing is unlawful on account of such conduct depends largely upon the particular circumstances in each individual case[6] and it was the duty of the trial court to determine whether, in view of all the circumstances present, the picketing was accompanied by, and likely to continue to consist of, such unlawful acts or threats of force or violence, or acts of fraud and misrepresentation as would tend to impede access to and passage to and from, and interfere with appellants' restaurant and business. There being substantial evidence tending to sustain the decision of the trial court on that issue, its judgment cannot be reversed on the ground that it is not sustained by sufficient evidence.

No question is presented under Art. I, §12[7] of the Indiana Constitution for the reason that appellants

Note 4. *Truax* v. *Corrigan, supra; American Foundries* v. *Tri-City, etc., Council, supra; Levy* v. *International, etc., Union* (1932), 114 Conn. 319, 158 Atl. 795.

Note 5. "Nor should an injunction issue when the violence consists merely in isolated acts, not likely to be repeated." Harper on Torts, §233.

Note 6. "Whether picketing is lawful or unlawful, depends in each particular case upon the conduct of the pickets themselves." *Karges Furniture Co.* v. *Amalgamated, etc., Union, supra.*

"Each case must turn on its own circumstances." *American Steel Foundry Co.* v. *Tri-City, etc., Council, supra.*

"When the situation in a particular case comes to be reviewed by the courts there will be no difficulty in drawing the line between acts permissible and acts forbidden." *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin, supra.*

sustained no injury, within the meaning of the Constitution, as a result of appellees doing that which was lawful for them to do. *Karges Furniture Co.* v. *Amalgamated, etc., Union, supra.* Nor did the trial court's refusal to enjoin appellees constitute a deprivation of appellants' right under the 14th Amendment[8] to the Constitution of the United States so long as the loss sustained by appellants resulted incidentally to the attainment, by appellees, of a lawful purpose by lawful means. *Truax* v. *Corrigan, supra.*

The judgment of the trial court is affirmed, and the temporary injunction heretofore granted by this court is dissolved.

*Note 7.* "All courts shall be open; and every man, for injury done him in his person, property or reputation, shall have remedy by due course of law. . . ." Indiana Constitution, Art. 1, §12.

*Note 8.* ". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." 14th Amendment, Constitution of the United States.