ROTH *v.* LOCAL UNION NO. 1460 OF RETAIL CLERKS UNION ET AL.

[No. 27,254. Filed December 22, 1939. Rehearing denied January 23, 1940.]

*Crumpacker & Freidrich,* and *Jay E. Darlington,* for appellant.

*Whitaker & Powell,* and *Faust, Faust & Faust,* for appellees.

SHAKE, C. J.—This is an appeal from an interlocutory order granting a temporary injunction on the application of appellant, who was plaintiff below. The court found the facts specially and stated conclusions of law. There was no motion for a new trial.

In the facts found it appears that at all the times under inquiry the plaintiff owned and operated a small retail grocery, fruit, and vegetable store in the city of Hammond and that he had three employees; that the defendant Local Union No. 1460 of Retail Clerks Union coerced said employees into joining its organization, by threatening them that if they did not do so the store would be picketed and that they would lose their jobs; that thereafter the union requested said employees to go on strike and threatened them with fines if they refused; that the employees refused to strike and resigned from the union; that thereupon the union began to picket the plaintiff's store, by causing one of its agents to continuously walk to and fro on the sidewalk in front of said store, wearing a sign which read:

"This store is unfair to Retail Clerks Union Local No. 1460, affiliated with American Federation of Labor;"

that there was no strike in the store; that plaintiff was at peace with his employees; that none of them belonged

or wanted to belong to said union; and that "the object of the picketing (was) to compel the store owner, against his desire, to sign a closed shop contract with the union whereby the employees would be compelled to join the union, against their will, or be discharged."

The finding recited that the sign carried by said pickets was of the type commonly used by striking employees and was designed to convey to the public and to the plaintiff's customers the idea that the plaintiff refused employment to, and discriminated against members of said union, which implication was false and operated as a fraud upon the plaintiff, his employees, and the public; that the plaintiff had been harassed and annoyed by said picketing and that a disturbing and notorious situation had been created in front of his store, which interfered with and diminished his business; and that irreparable injury had been inflicted upon the plaintiff which was incapable of accurate computation, and for which there was no adequate remedy at law, all of which would continue indefinitely unless restrained by the court. The court further found that the plaintiff had performed all obligations imposed upon him by law; that the public officers charged with the duty of protecting plaintiff's property were unable or unwilling to furnish adequate protection; and that the picketing of plaintiff's store had been peaceful and free from violence of any kind.

Upon the above facts, the court stated the following conclusions of law: (1) that the case involved a labor dispute within the terms of Ch. 12, Acts of 1933, commonly known as the Anti-Injunction Act; (2) that the court had jurisdiction to issue and should issue a temporary injunction enjoining the acts complained of, subject to the provisions contained in the third conclusion; and (3) that the court should on its own

motion authorize defendants to do a modified type of picketing, and that failing so to do they should be enjoined.

The temporary injunction followed the conclusions of law and enjoined the defendants from coercing or attempting to coerce plaintiff to sign a closed shop contract; from coercing or attempting to coerce plaintiff to compel his employees to become members in the defendant union; and from coercing or attempting to coerce plaintiff's employees to become members of said union. They were also enjoined from in any manner intimidating or warning customers or persons doing business with plaintiff to stay away from his store. The defendants were authorized, however, to picket the plaintiff's store by causing one agent at a time to walk in front of said store and carry a sign with letters 1½ inches high, clearly legible, bearing the following text:

"The object of this picketing is to compel the store owner to sign a closed shop contract with Retail Clerk's Union Local No. 1460, A. F. of L.

"His clerks are not on strike, do not wish to join the union and are satisfied with wages, hours and working conditions."

Except as above authorized, all picketing was enjoined, and, upon failure of the union to exercise the privilege granted within 15 days from the date of the order, the temporary injunction was made unconditional.

By proper assignments of error and cross-errors, the correctness of each of the trial court's conclusions of law and that part of the temporary injunction undertaking to prescribe a form of permissible picketing is challenged.

Prior to the enactment of any statute upon the subject in this state, this court recognized, under the prin-

ciples of the common law, the right to picket in controversies between an employer and his employees, where there was no resort to force, threats, intimidation, or other unlawful means. *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 75 N. E. 877, 2 L. R. A. (N. S.) 788, 6 Ann. Cas. 829. This right, when lawfully used, has been declared to be a proper exercise of free speech and peaceable assemblage and the right to use the public streets and highways. It has also been held that when such picketing is accompanied by force, intimidation, or coercion it becomes unlawful and will be enjoined by the court in the exercise of its equitable powers. *Thomas* v. *City of Indianapolis* (1924), 195 Ind. 440, 145 N. E. 550, 35 A. L. R. 1194. Picketing becomes unlawful when either the object thereof or the means used is unlawful. Thus picketing for an unlawful purpose will taint and render unlawful acts done in furtherance thereof which would have been lawful if done for a legitimate purpose; and, conversely, a lawful objective will not justify the employment of means which are themselves unlawful. *Local 26, Natl. Bro. of Op. Potters* v. *City of Kokomo* (1937), 211 Ind. 72, 83, 5 N. E. (2d) 624; *McKay* v. *Retail Automobile Salesman's Local Union No. 1067* (1939), 89 P. (2d) 426, 90 P. (2d) 113.

In 1933 the General Assembly passed what is commonly known as our Anti-Injunction Act. Acts 1933, Ch. 12, §§ 40-501 to 40-514 Burns' 1933. The broad purposes of the act, as gathered from its terms, appear to be to declare the public policy of this state with respect to controversies between employers and their employees and to place limitations upon the jurisdiction of courts to grant injunctions in such cases. Appellant has questioned the validity

of the sections of the act relating to the last-mentioned objective, upon the theory that they are unconstitutional encroachments by the legislative branch of the government upon the powers of the judiciary. We think the present controversy may be determined without resort to a consideration of that subject. Courts will not pass upon a constitutional question or decide whether a statute is invalid, unless such decision is absolutely necessary to a disposition of the cause on its merits. *State* v. *Darlington* (1899), 153 Ind. 1, 53 N. E. 925; *Hewitt* v. *State* (1908), 171 Ind. 283, 86 N. E. 63.

We can not, however, ignore the declarations of public policy contained in the above-mentioned act. These are directly expressed in specific terms. They are as follows:

> "In the interpretation of this act and in determining the jurisdiction and authority of the courts of the state, . . . the public policy . . . is hereby declared as follows:
>
> " . . . the individual unorganized worker . . . should be free to decline to associate with his fellows, . . . have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment; and *that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection* . . . " (Our italics.) Acts 1933, Ch. 12, § 2, § 40-502 Burns' 1933.

To ascertain the intent of the legislative body that enacted a statute is the fundamental rule for its judicial construction. When the purpose of an act is expressed in clear and unambiguous terms, this must be accepted as the solemn declaration of

the sovereign. The public policy of the state is a matter for the determination of the Legislature and not for the courts. The statute here under consideration declares that it is the public policy of this state that the individual unorganized worker shall be free to decline to associate with his fellows and that he shall be free from interference, restraint, or coercion on the part of his employer. This must mean that no labor union may demand that an employer require his employee to join such union, because no employer has the right to require an employee to join or refrain from joining a labor union. Any person or group which undertakes to coerce an employer to do that which is contrary to the express public policy of this state thereby undertakes to compel the performance of an unlawful act. The lawful weapon of peaceful picketing may not be utilized to accomplish such an unlawful purpose. It is quite immaterial that the things done to bring about the unlawful purpose were not *per se* unlawful. This is our interpretation of our statute.

In *McKay* v. *Retail Automobile Salesman's Local Union No. 1067, supra,* the District Court of Appeal for the First District of California, considered a statute substantially like ours and reached the same conclusion. After exhaustively reviewing the cases and discussing the principles involved, the court said:

> "When acting thus under the statute any 'individual workman' or group of individual workmen has the right to bargain with his employer 'free from the interference, restraint, or coercion' of the employer, directly or indirectly. The statute having fixed the duty of the employer in such matters, no 'individual workman' and no group of employees or others may force the employer to breach that duty by picket, boycott, secondary boycott, or any other means. The privilege of 'freedom of association, self-organization, and

designation of representatives of his own choosing' is the meat of the declared state policy, and this is a substantial right which may be protected by injunction. To this end the State has declared that it is for the greatest benefit of the employer and the employee, and the general public at large, that controversies over conditions of employment should be settled by negotiation, arbitration, and conciliation, rather than by force or intimidation on the part of either employer or employee. We should add that we are not expressing herein our own philosophy in relation to the many controversies arising between employers and employees, nor to those arising between certain groups of employee organizations. We are merely stating the policy the legislature has adopted as the law controlling such relations."

In this connection, see also: *Fornili* v. *Auto Mechanics Union, etc.* (1939), 200 Wash. 283, 93 P. (2d) 422; *Swing* v. *American Federation of Labor et al.* (1939), 372 Ill. 91, 22 N. E. (2d) 857; *Meadowmoor Dairies, Inc.* v. *Milk Wagon Drivers Union* (1939), 371 Ill. 377, 21 N. E. (2d) 308.

The facts are not here in dispute. The court found from the evidence (which is not before us) that the plaintiff had performed all obligations imposed upon him by law; that he was at peace with his employees; that none of them belonged or wanted to belong to the picketing union; and that the object of the picketing complained of was to compel the plaintiff, against his desire, to sign a closed shop contract, whereby his employees would be compelled to join the union against their will or be discharged, which, as we have already pointed out, the plaintiff was prohibited from doing by positive law. Under these circumstances, the picketing was wrongful and oppressive and it ought to have been enjoined.

The trial court's attempt to substitute a form of picketing which it thought would be proper can not

be justified for several reasons. The picketing of plaintiff's place of business for the purposes for which it was done would not have been made proper by the use of the sign suggested by the court; the relief granted was without the scope of the issues; and, *if* picketing had been proper, it could not have been the function of the court to prescribe the form, context, and character of the sign that might be displayed. The privilege of free speech carries with it freedom of choice as to the mode of expression that may be employed.

Reversed, with directions to the trial court to restate its conclusions of law in harmony with this opinion, and to modify the temporary injunction accordingly.