LOCAL NO. 1460 OF RETAIL CLERKS UNION ET AL. *v.* ROTH.

[No. 27,560. Filed March 5, 1942. Rehearing denied March 26, 1942.]

*Faust, Faust & Faust,* of Indianapolis, for appellants.

*Crumpacker & Friedrich* and *Jay E. Darlington,* all of Hammond, for appellee.

RICHMAN, J.—The general character of this controversy may be learned from the opinions in the two former appeals, *Roth* v. *Local Union No. 1460 of Retail Clerks Union* (December 22, 1939), 216 Ind. 363, 24 N. E. (2d) 280, and *Local No. 1460 of Retail Clerks Union* v. *Roth* (February 24, 1941), 218 Ind. 275, 31 N. E. (2d) 986. In the first appeal we ordered modified an interlocutory order granting temporary injunction. In the second we reversed a final decree granting a permanent injunction and ordered a new trial which has since been had with special finding of facts and conclusions of law on which again a final decree was entered granting a permanent injunction from which this third appeal is taken.

If the facts now are substantially the same as in the second appeal we need not restate the applicable law for the second opinion will remain the law of the case. 5 C. J. S. Appeal & Error, § 1821, p. 1267.

The factual basis for the opinion is epitomized in the sentence: "The employer had interfered and aided and encouraged his employees to sever their connection with the union." (218 Ind. 281.)

Now it is claimed that they had ceased to be members a few hours prior to his interference. This claim is predicated on the statement of the union's agent to two of the clerks that if they did not strike it would cost them $50 to get back in the union. They testified that they understood therefrom that they were no longer members and therefore regarded the signing and mailing of the letter of resignation as merely a formal notification of a prior severance of their relations with the union. Hence appellee asserts he was guiltless of interference with that relationship.

We doubt the authority of an agent of the union to

expel its members in such a casual manner. We doubt also the power of a member to repudiate his status by a mental process of which the union is not informed. But assuming that the clerks thought that they were no longer members, it does not appear that any such thought was in the mind of the employer when he handed them the letter addressed to the union informing it that the three clerks thereby resigned. Persons do not resign from an organization with which they are not connected. The letter assumes the present existence of a relationship which it proposes to dissolve.

In the former opinion we commented upon the fact that none of the clerks knew about the letter until it was handed them ready for their signatures and that its source was a mystery. In the retrial appellee had the opportunity of producing evidence to rebut any erroneous inference we may have drawn from the facts and from his unexplained connection with the letter. But he did not choose to testify. Nor was his conduct in anywise explained. There is no change in the evidence as to what he did. Miss Carlson changed her testimony as to what she thought when he handed her the letter. But her thoughts do not characterize his action. While there may be some doubt from the evidence that she or the other clerks were in fact coerced, there is no escape from the conclusion that their employer interfered and aided and encouraged his employees to sever a connection with the union which he thought existed, and this at the time of the picketing which he sought to enjoin. We think the facts are substantially the same as related in the second opinion which therefore is the law of the case.

The decree is reversed with instructions to set it aside, restate conclusions of law in harmony with this

opinion and enter a decree that appellee take nothing and appellant recover its costs.

NOTE.—Reported in 39 N. E. (2d) 775.