SPICKELMIER ET AL. *v.* CHAMBERS ET AL.

[No. 16,877. Filed March 15, 1943. Rehearing denied April 30, 1943. Transfer denied June 16, 1943.]

*Carl Wilde, Fae W. Patrick,* and *Owen S. Boling,* all of Indianapolis, for appellants.

*Faust, Faust & Faust,* of Indianapolis, for appellee.

DRAPER, J.—The appellant, Spickelmier Fuel and Supply Company, a copartnership engaged in the business of manufacturing and selling concrete products and other building materials at wholesale and retail, brought this suit to enjoin the alleged unlawful picketing of its place of business by the appellee union and for damages. The appellee filed its answer in denial and further asserted that a bona fide labor dispute existed between the parties and that the appellant had made no effort to settle such dispute by negotiation or otherwise. The appellant prosecutes this appeal from a decision favorable to the appellee.

It appears that on the morning of February 10, 1941, two men representing the appellee, each carrying placards bearing the legend "THIS PLACE IS UNFAIR TO ORGANIZED LABOR," picketed one of appellant's premises. The picketing, although peaceable, had a disturbing effect upon appellant's customers

and otherwise adversely affected appellant's business. The appellant conducted a nonunion place of business and employed among others about thirty-five men engaged as drivers, helpers, warehousemen and yardmen. About three and one-half years prior to the picketing the parties had conferred with reference to the payment by appellant of the Union scale of wages to its drivers, and the appellant had said that it could not meet the union wage scale at that time. In the early part of 1939 another conference had the same result. Two more conferences took place in July of 1940, after which time there were no further negotiations or contacts between them. Following the last conference the appellee undertook to organize the appellant's drivers, the appellant offering no objection, and was successful in obtaining five signatures to membership applications, but none of the applicants ever paid the initiation fee or became members of the union. The appellant's employees were not members of any union and had no desire to become members of any union and there was no dispute or controversy of any kind between them and their employer.

The problem presented invokes the application of Acts of Indiana General Assembly, Acts 1933, ch. 12, § 1, p. 28, § 40-501, et seq., Burns' 1940 Replacement, which legislation is substantially identical with the provisions of the Norris-LaGuardia Act, USCA Title 29, § 101, et seq.

The act declares the public policy of this State, defines a labor dispute and forbids the issuance of any injunction in a case involving or growing out of a labor dispute except in strict conformity with the provisions thereof.

It has been held by the United States Supreme Court that the right to picket involves the right of free speech

guaranteed by the Federal Constitution, and that in cases involving picketing state courts must act in subordination to the jurisdiction of the Supreme Court of the United States to enforce constitutional liberties. *Milk Wagon Drivers Union of Chicago, et al.* v. *Meadowmoor Dairies Inc.* (1941), 312 U. S. 287, 85 L. Ed. 836; *American Federation of Labor et al.* v. *Swing et al.* (1941), 312 U. S. 321, 85 L. Ed. 855, and the Supreme Court of Indiana has held that the decisions of the Supreme Court of the United States are controlling in this State. *Davis et al.* v. *Yates et al.* (1941), 218 Ind. 364, 32 N. E. (2d) 86.

However we are of the opinion that the necessary elements of a labor dispute as defined by ch. 12, § 13, Acts of 1933, § 40-513, Burns' 1940 Replacement, were present in this case irrespective of any question of constitutional guaranties.

It is contended by the appellant that no labor dispute could have existed between the parties for the reason that the only demand ever made upon appellant was that it require its employees to join the union, and that this was an unlawful demand which cannot constitute a labor dispute under the law; and the appellant undertakes to bring this case within the rule laid down in the case of *Roth* v. *Local Union No. 1460 of Retail Clerks Union et al.* (1940), 216 Ind. 363, 368, 24 N. E. (2d) 280. In that case the object of the picketing was to compel the employer against his desire to sign a closed shop contract with the union whereby his employees would be compelled to join the union against their will or be discharged, and in which case our Supreme Court said that:

"Picketing becomes unlawful when either the object thereof or the means used is unlawful. Thus

picketing for an unlawful purpose will taint and render unlawful acts done in furtherance thereof which would have been lawful if done for a legitimate purpose; and, conversely, a lawful objective will not justify the employment of means which are themselves unlawful."

and there can be no doubt that picketing is a form of economic coercion which can be upheld only when some lawful justification for its exercise exists.

But we are compelled to take a broader view of the evidence in this case than that urged upon us by the appellant. It is true that a representative of the appellee in conversation with one of the partners several times stated that the appellee desired the appellant "to put your men in the Union," but it also appears that the appellee was demanding that the appellant pay the union scale of wages which the appellant would not do. The appellee informed the appellant that its object was to organize the appellant's drivers, that it desired to make a contract with the appellant and that it wished the appellant to pay the union scale of wages to the end that other concerns in the same business who had contracts with the appellee and who paid the union scale would no longer complain that they were unable to meet the appellant's competition because of the comparative meagerness of the wage paid by appellant.

For the purpose of ascertaining the true nature of the controversy between these parties we cannot isolate and give undue emphasis to a single expression of the representative of one of them, nor, should we be able so to do, could we ascribe to it as a matter of law the sinister meaning contended for by the appellant. To us the expression "put your men in the Union" when considered in the light of the whole conversation, does not of necessity demand or even suggest the use of force or coercion to accomplish it, and the evidence

does not show that the appellant so understood it, for its refusals to deal with the appellee were never put upon that ground but upon the ground that it could not afford to pay the union scale and upon the further ground that if the appellant had union drivers the appellee would "want to organize the whole town with his (appellant's) drivers." We recognize the rule announced in the case of *Roth* v. *Local Union No. 1460 of Retail Clerks Union et al., supra,* as being binding upon this court but that case is distinguishable from the case at bar. In our opinion the evidence in this case does not show that the picketing was conducted for such an unlawful purpose as to taint and render unlawful the acts done in the furtherance thereof.

The appellant contends that if a labor dispute did in fact exist, the period of time intervening between the last conversations between the parties and the beginning of the picketing must be held to be an abandonment of any labor dispute arising out of or evidenced by those conversations, which raises the question as to when and how the dispute terminated, if it had in fact ceased to exist. It had not terminated by any agreement of the parties. It had not terminated by the accomplishment of the purpose of the union nor had either party in any way receded from the position previously taken. On the other hand the evidence discloses that after the last conversations between the parties the appellee continued its unsuccessful efforts to organize the appellant's men, contacting all of appellant's drivers for that purpose, the last on February 9, 1941, while during the same period of time the appellant's drivers were several times, when called together by appellant, as often happened, asked whether they were satisfied with their jobs; wages were increased in some instances; and on December

28, 1940, at the usual annual good fellowship meeting and banquet they were advised of a profit-sharing plan contemplated for the ensuing year. There is no direct evidence that these activities on the part of the appellant were intended to thwart the efforts of the appellee to organize the men, but they would in our opinion tend to do so and this the appellant must have known. It therefore appears to us that each of the parties, following their last conversations, continued to the time of the picketing to take steps well calculated to fortify their respective positions, and we therefore are of the opinion that the labor dispute between these parties continued to exist and did exist on the 10th day of February, 1941.

The appellant lastly contends that the picketing should have been enjoined in any event because the banners carried by the pickets were false, fraudulent and misleading in that the appellant, if unfair, was unfair not to organized labor generally but to the particular union involved. It is the law that picketing accompanied by false statements or misrepresentation of the facts concerning the controversy is unlawful and will be enjoined. *Weist et al.* v. *Dirks* (1939), 215 Ind. 568, 20 N. E. (2d) 969; *Scofes et al.* v. *Helmar et al.* (1933), 205 Ind. 596, 187 N. E. 662, 31 Am. Jur. 926. And the test of falseness seems to be whether the facts asserted by the banners have the effect, intentionally or otherwise, of misrepresenting the facts of or involved in or connected with the controversy. In this case the appellant employed no union labor and had no agreement with any union. The term "unfair to organized labor" has a well understood meaning. It neither says nor implies that the one picketed is unfair to *all* organized labor. It advertises, and in our opinion is now generally understood

to advertise the existence of a controversy between the one being picketed and organized labor in some one or more of its several branches, but not necessarily *all* organized labor.

We are of the opinion that the court did not err in refusing to grant injunctive relief upon this ground.

Judgment affirmed.

NOTE.—Reported in 47 N. E. (2d) 189.