LOCAL UNION No. 135 ETC. ET AL. *v.* MERCHANDISE WAREHOUSE COMPANY, INC.

[No. 18,728. Filed March 13, 1956. Rehearing denied April 17, 1956. Transfer denied November 14, 1956.]

58

*Gregg, Fillion, Fillenwarth & Hughes,* of Indianapolis, for appellants.

*Thomas F. Gibson, Jr., Leo L. Kriner,* and *Harry J. Harmon,* all of Indianapolis, for appellee.

CRUMPACKER, J.—The appellants were enjoined by order of the Marion Superior Court from continuing to maintain a picket line they had established at the entrance to the appellee's place of business in Indianapolis, Indiana, as the result of which picket line the appellee suffered a financial loss of $400 per day during the time it was maintained with the probability of insolvency if continued. The appellants contend that such order is contrary to law because injunctions, under the circumstances of this case, are prohibited by the Anti-Injunction Act of 1933, §40-501, et seq. Burns' 1952 Replacement, in cases involving or growing out of labor disputes.

It is fundamental, we think, that if a litigant seeks the protection of the Anti-Injunction Act against an injunction that is otherwise proper, the burden is on him to bring himself within the provisions of the act. The most cursory reading of the act is sufficient to convince one that it is predicated in its entirety upon the existence of a labor dispute and if none exists it has no application. The court found the facts specially and among its findings is the following: "That there is no labor dispute between the plaintiff and its employees and the defendant union or its members, as disclosed by the facts in this case." If that

finding is supported by evidence of probative value it disposes of the major question involved in this appeal.

There is evidence tending to establish the following facts: The appellee is a corporation duly organized and existing under the laws of the State of Indiana, engaged in the warehouse business in the city of Indianapolis, Indiana, in connection with which it employs from 8 to 10 persons none of whom belongs to the appellant union. The appellant Local No. 135 is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers and is an association of individuals designated as a local labor union with approximately 5,000 members living in Indianapolis, Indiana. All members of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers customarily refuse to cross a duly authorized picket line. The appellee is a member of an organization known as the Indianapolis Warehouse Association all of whose members, except the appellee, have been organized by the appellant union and operating contracts with them have been negotiated. About a year ago the appellant had membership applications of all persons then employed by the appellee but for reasons not disclosed failed to ask for an election designating it as the bargaining agent for said employees. In the meantime the matter of organizing the appellee's employees remained quiescent and all but one of those for whom the appellant held cards voluntarily left the appellee's employment and went elsewhere to work. On April 25, 1955, without having made any effort whatever to organize the appellee's present employees by contact and persuasion the appellant placed a picket line at the entrance of the appellee's place of business carrying signs bearing the legend "Merchandise Warehouse Company, Inc. does not employ members of Teamsters, Chauffeurs, Warehouse-

men & Helpers, Local No. 135 A. F. L., Indianapolis, Indiana." At least one picket, one J. D. Smith, was instructed by the appellants to keep all union drivers off the appellee's premises and it is reasonable to infer that, one picket having been so instructed, they all were. Although the picket line was peaceful in all respects it resulted in a stoppage of incoming merchandise to the appellee's warehouse with an attendant loss of $400 per day and if continued would constitute a menace to the appellee's survival in busines.

In our opinion these facts fail to show a labor dispute within the meaning of the Anti-Injunction Act of 1933. In this connection *Mitchell* v. *Gibbons* (1949), 172 Fed. 2d 970, is very much in point. In that case the United States Circuit Court of Appeals, 8th Circuit, said: "The defendants' attempt to organize them (the plaintiff's employees) and plaintiff's resistance result in the existence of a labor dispute." We are willing to go a step farther and say a union's attempt to organize a group of employees and the unwillingness of such employees to be organized constitutes a labor dispute. In the present case we have neither situation. There is not the slightest evidence that the appellee at any time in any degree resisted, in any way or manner, the appellants' efforts to organize its employees. In fact the only effort they made was 100 percent successful without the aid of a picket line but for some reason not disclosed by the evidence they slept on their rights until those employees whom they had "signed up" left the appellee's employ and went elsewhere to work. Almost a year later without any effort whatsoever to negotiate with the appellee or its present employees, they threw a picket around the appellee's place of business for the single purpose, they say, of organizing said employees all of whom, for aught that appears in the record, may have been ready and willing to join

the appellant union. Webster defines the word dispute as a "verbal controversy; contest by opposing argument or expression of opposing views or claims; controversial discussion." Sec. 13 of the Anti-Injunction Act, being §40-513, Burns' 1952 Replacement, defines a labor dispute as including "any *controversy* concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." (Our emphasis). Assuming that organizational efforts of labor unions are included in this definition obviously a controversy of some kind is essential to a labor dispute. Here we have none and under such circumstances there is no lawful justification for that form of economic coercion known as the picket line.

In this connection it is well to point out that the present case is distinguishable from *Spickelmier* v. *Chambers* (1943), 113 Ind. App. 470, 47 N. E. 2d 189, which the appellant contends is decisive of the question of the existence of a labor dispute. In the Spickelmier case the court said: "The appellant's employees were not members of any union and had *no desire* to become members of any union. . . ." (Our emphasis). If the present record showed "no desire" on the part of the appellee's employees to join Teamsters Local No. 135, which it does not, we would concede the existence of a labor dispute.

We recognize the peaceful picket as a legitimate weapon available to a labor union in its efforts to organize an industrial plant if such effort is met with resistance on the part of the management or its employees but, by reason of the economic repercussions that incidentally but inevitably follow its use, we feel

that an attitude of fairness and common decency condemns its use as being neither morally nor legally justified when organization can be accomplished without it.

We are aware that it is universally held by the courts of this country that the right to picket involves the right of free speech guaranteed by the Constitution of the United States. Such constitutional guaranty, however, does not protect falsity or misrepresentation. We think the clear implication of the signs carried by the pickets charged the appellee with refusing to hire members of the appellant union as a matter of fixed policy. There is no basis for such accusation as the only evidence on the subject discloses that a year ago 100 percent of the appellee's employees had signed membership cards in Teamsters Local No. 135. It is true that in the meantime all but one of such employees had gone elsewhere to work but to this day the matter of hiring members of said local was never discussed with the appellee nor, as far as the evidence discloses, has a member of Teamsters Local No. 135 ever presented himself for work at the appellee's plant. Picketing accompanied by misrepresentation of the facts involved will be enjoined. *Spickelmier* v. *Chambers, supra.*

Next the appellants assert that Teamsters Local No. 135, being an unincorporated association of individuals, a judgment against it as an entity, as is the case here, cannot stand. We agree that the judgment so far as it is against Teamsters Local No. 135 as such is a nullity. An examination of the whole record, however, indicates that this is a suit against a class of individuals too numerous to be brought into court and that the appellants James Burrello, William Schlott, Harry Belmore and Gene San Soucie were sued as the representatives of that class known as Teamsters Local No. 135. The judgment, by its express

terms runs against all the members of Teamsters Local No. 135, separately and severally, and against Gene San Soucie, President, James Burrello, William Schlott and Harry Belmore as their agents and representatives. To that extent the judgment is valid.

Finally, the appellants contend that the Congress of the United States, having occupied the field of labor management relations through enactment of the Taft-Hartley Act, the appellee's only remedy is in the manner therein provided and therefore the Marion Superior Court had no jurisdiction over the subject matter of this litigation. The Taft-Hartley Act and the machinery it sets up has to do only with labor management relations that involve inter-state commerce. By its finding No. 12 the court found "That the plaintiff's (appellee) business is not one engaged in inter-state commerce." If that finding is supported by competent evidence it disposes of the appellants' present contention. The appellee does an annual business in the warehouse involved of approximately $80,000 not more than 20 percent of which is derived from or flows into inter-state commerce. The National Labor Relations Board has classified warehousing as "an intra-state link in inter-state commerce." In *United Terminal Corporation*, 112 N. L. R. B. 121, said board said in effect that unless the operations listed in the category "intra-state link to inter-state commerce" has an annual volume of $100,000 received from services derived from interstate commerce, the operation is regarded as involving intra-state business only. Thus it appears that by the yardstick used by the Federal government itself in determining its jurisdiction in labor cases, the finding in question is sustained by the evidence.

Judgment affirmed.

## Concurring Opinion

Royse, C. J.—I am in complete and whole-hearted agreement with the holding of the majority opinion that there was no labor dispute in this case.

However, I cannot agree with the following dicta in their opinion:

"We are willing to go a step farther and say a union's attempt to organize a group of employees and the unwillingness of such employees to be organized constitutes a labor dispute".

In my opinion the principle thus announced directly contravenes a ruling precedent of our Supreme Court in the case of *Roth* v. *Local Union No. 1460 of Retail Clerks Union et al* (1940), 216 Ind. 363, 24 N. E. 2d 280, where the Supreme Court, in construing the Anti-Injunction Act of 1933, §40-501, et seq., Burns' 1952 Replacement, at p. 370, said:

"The statute here under consideration declares that it is the public policy of this state that the individual unorganized worker shall be free to decline to associate with his fellows and that he shall be free from interference, restraint, or coercion on the part of his employer. This must mean that no labor union may demand that an employer require his employee to join such union, because no employer has the right to require an employee to join or refrain from joining a labor union. Any person or group which undertakes to coerce an employer to do that which is contrary to the express public policy of this state thereby undertakes to compel the performance of an unlawful act. The lawful weapon of peaceful picketing may not be utilized to accomplish such an unlawful purpose. It is quite immaterial that the things done to bring about the unlawful purpose were not *per se* unlawful."

I believe the effect of the statement of the majority opinion would be to force an employer to force his

employees to join a labor union against their own personal wishes and thus deprive them of their inalienable rights as citizens, or to suffer the destruction of his business through the powerful and effective club of economic coercion—picketing.

Nor can I agree with the construction placed upon the case of *Spickelmier* v. *Chambers* (1943), 113 Ind. App. 470, 47 N. E. 2d 189, (Transfer denied) by the majority opinion. It is true that in that opinion, in stating the facts, this court said:

> "The appellant's employees were not members of any union and had no desire to become members of any union and there was no dispute or controversy of any kind between them and their employer."

However, as hereinafter shown, our opinion and decision in that case was not based on that fact. At p. 475, in discussing the issues presented, this court said:

> "It is true that a representative of the appellee in conversation with one of the partners several times stated that the appellee desired the appellant 'to put your men in the Union,' but it also appears that the appellee was demanding that the appellant pay the union scale of wages which the appellant would not do. The appellee informed the appellant that its object was to organize the appellant's drivers, that it desired to make a contract with the appellant and that it wished the appellant to pay the union scale of wages to the end that other concerns in the same business who had contracts with the appelle and who paid the union scale would no longer complain that they were unable to meet the appellant's competition because of the comparative meagerness of the wage paid by appellant."

We then stated our reasons for holding there was a labor dispute in the following language at pp. 476, 477:

> ". . . the evidence discloses that after the last conversations between the parties the appellee continued its unsuccessful efforts to organize the

appellant's men, contacting all of appellant's drivers for that purpose, the last on February 9, 1941, while during the same period of time the appellant's drivers were several times, when called together by appellant, as often happened, asked whether they were satisfied with their jobs; wages were increased in some instances; and on December 28, 1940, at the usual annual good fellowship meeting and banquet they were advised of a profit-sharing plan contemplated for the ensuing year. There is no direct evidence that these activities on the part of the appellant were intended to thwart the efforts of the appellee to organize the men, but they would in our opinion tend to do so and this the appellant must have known. It therefore appears to us that each of the parties, following their last conversations, continued to the time of the picketing to take steps well calculated to fortify their respective positions, and we therefore are of the opinion that the labor dispute between these parties continued to exist and did exist on the 10th day of February, 1941".

I, as a member of this court when that case was decided, approved that decision and I do so now. I did not then and do not now construe it as the majority opinion would do in this case.

## DISSENTING OPINION

BOWEN, J.—I cannot agree with the majority opinion in this case. The majority opinion recognizes that "a union's attempt to organize a group of employees and the unwillingness of such employees to be organized constitutes a labor dispute" within the meaning of the Anti-Injunction Act, §40-501, et seq. Burns' 1952 Replacement. By the definition of terms contained in such Act, §40-513, Burns' 1952 Replacement, it is stated:

"The term 'labor dispute' includes any controversy concerning any terms or conditions of employment, *or* concerning the *association* or *repre-*

*sentation of persons* . . . seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." (Our emphasis)

For this court to hold that the appellants in the instant case were not engaged in any controversy concerning the association or representation of persons seeking to arrange terms or conditions of employment seems, in my humble opinion, to constitute a denial of the undisputed evidence in the record before us. About a year ago the appellant union had received membership applications of all persons then employed by the appellee, and at the time of the picketing still there was one employee who held a membership card in the union. Considering the circumstances of the termination of employment of those who had signed cards, and the fact that the payroll of the appellee consisted of only eight to ten employees, the fact that there was one employee, or if there had been seven or eight employees who held membership in the union does not make any difference in principle. Our statute defining a labor dispute specifically provides that it makes no difference whether the disputants stand in the proximate relation of employer and employee. There is certainly undisputed evidence in the record which shows organizational activities prior to the time of this picketing by the union, with specifically named employees of the appellee.

Furthermore, the court found that the picketing in question was enjoined contrary to the provisions of the Anti-Injunction law of Indiana, was "peaceful and without violence and consisted of not more than six persons at one time, with only two pickets the majority of said time." The lower court's finding and decision does not furnish a basis for the decision of this court on appeal by reason of the fact that the lower court in

Finding No. 22 asserted "That there was no labor dispute between the plaintiff and its employees and the defendant union or its members". Such finding wholly ignores organizational picketing which is clearly recognized by the Anti-Injunction statute, and the finding that there was no labor dispute between the company and its employees or between the union and its members was not a finding that there was no labor dispute or controversy concerning the association or representation of persons seeking collective bargaining with the appellee. As to the real issue involved herein, such findings were wholly immaterial, and they do not constitute findings that there was not a labor dispute based upon the right to organizational picketing under the Anti-Injunction statute. The lower court seems to have based its decision upon the ground that the picketing, although peaceful and lawful, should be enjoined because it tended to create some economic coercion if permitted to continue, and the decision of this court in upholding such injunction, in my opinion, is directly contrary to the legislative policy of this state and the uniform decisions of the higher courts of this state in passing upon such matters and in interpreting the Anti-Injunction statute. The public policy of this state in such matters to guide courts in the interpretation of the Anti-Injunction Act is declared by our legislature as follows:

"Whereas, under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership associations, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-

organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definition of, and limitations upon, the jurisdiction and authority of the courts of the state of Indiana are hereby enacted."

Acts 1933, ch. 12, §2, p. 28, §40-502, Burns' 1952 Replacement.

The constitutional right of peaceful picketing is clearly recognized by an unbroken line of decisions in this state. In the first pronouncement of this court on this subject, *Vonderschmitt* v. *McGuire* (1935), 100 Ind. App. 632, 195 N. E. 585, involving a case in which movie operators who were not employees of a theatre in Bloomington, Indiana, picketed such theatre carrying signs bearing the inscription that the theatre was unfair to organized labor, Judge Curtis, writing the opinion of this court, overruled the contentions of the employer in the following words:

"There is no allegation that the appellees were going beyond the scope of peaceful picketing. This they had a right to do. There is no allegation that the picketing was accompanied by any unlawful acts."

The Supreme Court speaking through Judge Treanor in *Scofes* v. *Helmar* (1933), 205 Ind. 596, 187 N. E. 662, stated:

"That the receipts from their business were reduced $50 to $60 per day was the result experienced by appellants and desired by appellees in order to attain what, it is agreed, was the ultimate objects of the picketing, to cause appellants to agree to employ only union members and to pay

the rate of compensation and conform to the working conditions adopted by the union."

It is also stated in this opinion that the evidence established "that the immediate purpose in picketing was to cause appellants' employees to quit their employment and to cause appellants' patrons to withhold their patronage, *and to render more difficult the obtaining of supplies with which to conduct appellants' business,* . . . . We are of the opinion that the foregoing objects legally justify picketing, if lawfully conducted, even though such picketing may cause pecuniary loss to the business picketed." (Our emphasis). Citing *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 75 N. E. 477. Judge Treanor further stated:

"We think the present state of the law in Indiana respecting picketing is substantially in accord with the following judicial expressions:

" 'The court of appeals has for many years been disposed to leave the parties to peaceful labor disputes unmolested when economic rather than legal questions were involved. The employer, if threatened in his business life by the violence of the unions or by other wrongful acts might have the aid of the court to preserve himself from damage threatened by recourse to unlawful means, but the right of workmen to organize to better their conditions has been fully recognized. The fact that such action may result in incidental injury to the employer does not in itself constitute a justification for issuing an injunction against such acts. The interests of capital and labor are at times inimical and the courts may not decide controversies between the parties so long as neither resorts to violence, deceit or misrepresentation to bring about the desired results. *Stillwell Theatre, Inc.* v. *Kaplan* (1932), 259 N. Y. 405, 182 N. E. 63.

" 'Economic organization today is not based on the single shop. Unions believe that wages may be increased, collective bargaining maintained only if union conditions prevail, not in some single factory, but generally. That they may prevail it may

call a strike and picket the premises of an employer with the intent of inducing him to employ only union labor. And it may adopt either method separately. Picketing without a strike is no more unlawful than a strike without picketing. Both are based upon a lawful purpose. Resulting injury is incidental and must be endured. *Exchange Bakery & Restaurant, Inc.* v. *Rifkin* (1927), 245 N. Y. 260, 157 N. E. 130.

" 'Whether picketing is unlawful or lawful, depends in each particular case upon the conduct of the pickets themselves. . . . *Karges Furniture Co.* v. *Amalgamated, etc., Union, supra.*' "

This court held in *Spickelmier* v. *Chambers* (1943), 113 Ind. App. 470, 47 N. E. 2d 189, a case in which the appellant's employees were not members of any union and had no desire to become members of any union, that nevertheless the necessary elements of a labor dispute existed as defined by the statutes in force then. Such statutes are now in force for our consideration in the instant case. Furthermore, Judge Draper upheld the right of peaceful picketing, stating in such opinion that "picketing is a form of *economic coercion* which can be upheld only when some lawful justification for its exercise exists." (Our emphasis). The picketing in the Spickelmier case, which consisted of pickets carrying the banner "This Place is Unfair to Organized Labor" was held to be entirely lawful in the following words of such opinion: "In our opinion the evidence in this case does not show that the picketing was conducted for such an unlawful purpose as to taint and render unlawful the acts done in the furtherance thereof."

The United States Supreme Court in the case of *American Federation of Labor* v. *Swing* (1941), 312 U. S. 321, said:

"A state cannot exclude working men from peacefully exercising the right of free communication by

drawing the circle of economic competition between employers so small as to contain only an employer and those directly employed by him. . . . The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ."

In *Thornhill* v. *Alabama* (1940), 310 U. S. 88, the court struck down an anti-picketing statute in a state which attempted to prohibit organizational picketing in cases where the pickets were not employees of the business, and extended the constitutional safeguards announced in the *Swing* case, *supra*.

As the law now exists in this state, in my opinion, this court is without authority by reason of the Supreme Court decisions of this state and the overwhelming weight of authority in the country to enjoin lawful peaceful picketing merely because of the fact that it will indirectly result in economic coercion. In fact it can hardly be conceived in any case where peaceful picketing is employed that it would not result in economic coercion. Courts have uniformly held that picketing is an exercise of a right of free speech guaranteed by the Federal Constitution. *Building Service Union* v. *Gazzam* (1950), 339 U. S. 532; *Cafeteria Employees Union* v. *Angelos* (1943), 319 U. S. 778; *Bakery & Pastry Drivers & Helpers Local* v. *Wohl* (1942), 315 U. S. 769; *American Federation of Labor* v. *Swing*, *supra;* *Carlson* v. *California* (1940), 310 U. S. 106; *Thornhill* v. *Alabama, supra; Senn* v. *Tile Layers Union* (1937), 301 U. S. 468.

The appellee in the instant case relies on the case of *Building Service Union* v. *Gazzam, supra.* However, Justice Minton in writing the opinion in the Gazzam case distinguishes it from the *Swing* case, *supra,* and states:

"Peaceful picketing for any lawful purpose is not prohibited by the decree under review. The state has not here, as in *Swing* relied on the absence of an employer-employee relationship. Thus the State has not, as was the case there, excluded 'workmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him.' "

The opinion further recites that "There was no injunction against picketing generally." In the *Gazzam* case, *supra,* the only difference existing between the employer and the union was the refusal of the employer to sign a contract requiring his employees to join the union, which act would have been in violation of a Washington statute. By the express words of the Supreme Court the *Swing* case, *supra,* was not overruled nor is it authority for the injunction issued in the instant case.

Furthermore, this court a little more than a year ago, in a case which involved similar facts, in my opinion, held directly opposite to the holding in the instant case. *Teamsters Local No. 364, etc.* v. *Stewart's Bakery* (1955), 125 Ind. App. 174, 123 N. E. 2d 468. In the Stewart case this court stated:

"If we consider these allegations in aid of the temporary injunction involved it is clear that it enjoins the appellant from picketing the appellee's place of business in a peaceful manner and for a lawful purpose as well as otherwise. Such an injunction, even if only temporary, is contrary to law as it has long since become the settled law of this state that picketing, in connection with a *labor dispute,* without resort to threats, force, intimidation, fraud or other unlawful means is a proper exercise of the right of free speech and peaceable assemblage. *Roth* v. *Local Union No. 1460 of Retail Clerks Union* (1940), 216 Ind. 363, 24 N. E. 280; *Vonderschmitt* v. *McGuire* (1935), 100 Ind. App. 632, 195 N. E. 585." (Our emphasis).

This court recognized the existence of a labor dispute in the *Stewart* case, *supra,* under circumstances in which this court could very well have employed the same reasoning as has been applied to the facts of the case at bar. In the instant case, as in the *Stewart's Bakery* case, *supra,* the injunction enjoins the appellant "from continuing and maintaining the picket line existing in front of the driveway and warehouse premises of the appellee". There can be no question that it enjoins the appellant from picketing the appellee's place of business in a peaceful manner and for a lawful purpose as well as otherwise; and as this court, less than a year ago, in the *Stewart's Bakery* case, *supra,* using the same language as contained in the sentence last above, went on to say: "Such an injunction, even if only temporary, is contrary to law as it *has long since become the settled law* of this state that picketing, in connection with a labor dispute, without resort to threats, force, intimidation, fraud or other unlawful means is a proper exercise of the right of free speech and peaceable assemblage." Citing cases. (Our emphasis.) The court in the case at bar found that "the picketing was peaceful and without violence" nor was there a finding of any other acts other than the so-called "economic coercion" present in the facts before us.

There are no specific unlawful acts enjoined in the instant case, and as this court stated in the *Stewart's Bakery* case, *supra,* "Ordinarily an injunction which does not specify what specific acts are under restraint is too vague and uncertain to be enforcible." Citing 43 C. J. S., Injunctions, §§206b, p. 932.

To hold that there must be some resistance on the part of the employer or an unwillingness on the part of the employees to organizational efforts on the part of a

union would lead to a complete denial of the right of peaceful picketing and would tend to encourage rather than discourage peaceful organizational measures. There would be no need for peaceful picketing in the event the employees were willing to join the union. Hidden within the verbiage of this present decision is an indirect result, that organizational efforts under the circumstances of this record, would have to be confined to visits to the individual employees since the unions have no right to enter upon the premises of the employer to engage in organizational activities, and to deny the right of peaceful picketing as this court has done in this case, in my opinion, constitutes a prohibition against peaceful picketing. By reason of the fact that such right of peaceful picketing is recognized by the guarantee of free speech in our federal and state constitutions, by the declared public policy of this state, and the decisions of our courts of last resort in this state and in the country generally, in my opinion, this court has fallen into error and inconsistency.

In my opinion the judgment of the lower court herein should have been reversed.

Kelley, J., concurs in dissent.

NOTE.—Reported in 132 N. E. 2d 715.
Transfer denied, Achor, Acting C. J.