FULFORD ET AL. *v.* SMITH CABINET MFG. COMPANY, INC.

[No. 17,704. Filed March 10, 1948. Rehearing denied April 2, 1948. Transfer denied May 25, 1948.]

*Oliver A. Switzer,* of South Bend, and *Harry Weinstock,* of New York, N. Y., attorneys for appellants.

*Mead & Mead,* of Salem, *Yeager, Linder & Tinder* and *Clifford L. Hardy,* all of Indianapolis, attorneys for appellee.

DRAPER, C. J.—In this action, brought by the appellee company, the court below issued a temporary injunction against the appellants, about 100 in number, all of whom were picketing the company's plant, and all but two of whom were former employees of the company.

The evidence discloses that the appellee company manufactured and shipped radio cabinets from its plant in Salem, Indiana. In the spring of 1947, the two nonemployees started to organize the production workers. On August 19, 1947, a consent election was held and the union prevailed. (Local No. 309, C. I. O., United Furniture Workers of America.) Thereafter

the company refused to recognize the union until it was certified as the representative of said employees and the union refused to take the necessary steps leading to certification. It is conceded that a labor dispute ensued. On September 4, 1947, the plant was struck. Mass picketing followed. Bumper-to-bumper parking blocked ingress. Some of the pickets trespassed on company property. Many armed themselves with wooden staves belonging to the company. Others provided themselves with billy clubs. Some workers attempting to enter the plant were discouraged by threats. Several were physically detained. Local law-enforcement agencies were unable to cope with the situation. The work stoppage caused materials being processed to deteriorate and orders to be cancelled, as well as some damage to and loss of property.

The appellee company knew the results of the election and acknowledged the union's majority status. It refused to recognize the union as the employees' representative and refused to negotiate or arbitrate the question of recognition, which seems to have been the only demand made by the union.

The court heard the evidence, made findings pursuant to § 40-507, Burns' 1940 Replacement and entered a judgment which, in general, enjoins the commission of unlawful acts in connection with the picketing activities of the appellants. No complaint is made of the breadth of the order.

§ 40-508, Burns' 1940 Replacement reads as follows:

"No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with

the aid of any available governmental machinery of mediation or voluntary arbitration."

The substantial question presented is whether the judgment rendered was prohibited by that section for the reason that the appellee failed to comply with an obligation imposed by law, to-wit: failed to recognize the union as representative of the production employees and further failed to make every reasonable effort to settle the dispute by negotiation, mediation or voluntary arbitration.

The appellee insists it was not required to recognize the union as such representative in the absence of certification, and under the circumstances here, was not required to negotiate, mediate or arbitrate.

We think the answer is to be found in § 9 (f) (g) (h) of the Labor-Management Relations Act, 1947. (Taft-Hartley) (Public Law 101, 80th Congress). As above stated the election was held on August 19, 1947. The effective date of § 9 was August 22, 1947. The union had not been certified prior thereto and was never certified thereafter. The Act provides certain filing and affidavit requirements as a condition precedent to the acquisition by the union of any rights thereunder. Compliance entitled it to certification. It could not be certified in the absence thereof.

We think it is the plain intent of the Act that if a union is not eligible for certification it cannot compel recognition as the representative of the employees, and need not be recognized as such.

Any other construction would leave the unit without effective representation and would be contrary to the spirit of the Act. The company's refusal to recognize the union was therefore not a failure to comply with an obligation imposed by law.

Since the union's sole demand was for recognition as the representative of the production workers, upon which it insisted, but which the appellee was lawfully entitled to refuse, and had finally refused, there was nothing to negotiate, mediate or arbitrate, for the law could not require the appellee, by the compulsory employment of those processes, and as the only possible result thereof satisfactory to the appellant, to forego a clear legal right.

It is probably true that under the National Labor Relations Act as it stood before amendment in 1947 the company would have been required to recognize the union as bargaining agent in the absence of certification. *N.L.R.B.* v. *Dahlstrom Metallic Door Co.*, 112 F. 2d 756. But under that Act the union was not required to qualify itself in the manner above mentioned.

Finding no error, the judgment is affirmed.

Bowen, P. J., dissenting.

Note.—Reported in 77 N. E. 2d 755.

## DISSENTING OPINION

Bowen, P. J.—I cannot agree with the majority opinion in this case. The appellee in this case sought and secured the affirmative relief of a temporary injunction in the court below against the appellants. In my opinion, the action of the lower court in granting this injunction was in direct conflict with the legislative policy of this State and the provisions of the statute concerning the issuance of injunctions in labor disputes. §§ 40-501, 40-514, Burns' 1940 Replacement.

The facts are undisputed that this case involves a labor dispute and that the appellee employer refused

to negotiate, mediate, or arbitrate this dispute. The statute, § 40-508, Burns' 1940 Replacement provides:

"No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

The Act in question was adopted in Indiana in 1933 and identically follows the wording of the Federal legislation which was passed a year earlier on March 23, 1932 (U.S.C.A., Title 29, § 101-115) and which is commonly and judicially referred to as the Norris-LaGuardia Anti-Injunction Act. This Act was in all respects identical with the Federal Act and set forth the identical policy, and this court should give the same construction to the Act as was given to the Federal Act by the Supreme Court of the United States. The Supreme Court of the United States in interpreting this Act stated in *Milk Drivers Union* v. *Lake Valley Farm Products* (1940), 311 U. S. 91 at page 101:

". . . The Norris-LaGuardia Act—considered as a whole and in its various parts—was intended drastically to curtail jurisdiction of federal courts in the field of labor disputes. And this Court has said that 'the legislative history of the Act demonstrates that it was the purpose of the Congress further to extend the prohibitions of the Clayton Act respecting the exercise of jurisdiction by federal courts and to obviate the results of the judicial construction of that Act.'" *New Negro Alliance* v. *Sanitary Grocery*, 303 U. S. 552.

And at page 102:

"The Norris-LaGuardia Act, passed in 1932, is the culmination of a bitter political, social and

economic controversy extending over half a century. Hostility to 'government by injunction' had become the rallying slogan of many and varied groups. Indeed, as early as 1914 Congress had responded to a widespread public demand that the Sherman Act be amended, and had passed the Clayton Act, itself designed to limit the jurisdiction of federal courts to issue injunctions in cases involving labor disputes. . . . Thus, the Senate Judiciary Committee, reporting the Norris-LaGuardia Act, said: 'That there have been abuses of judicial power in granting injunctions in labor disputes is hardly open to discussion. The use of the injunction in such disputes has been growing by leaps and bounds. . . .' (H. Rep. No. 163, 72nd Cong. 1st Sess., p. 8.) And on the same subject the House Judiciary Committee said: 'These are the same character of acts which Congress in Section 20 of the Clayton Act of October. 15, 1914, sought to restrict from the operation of injunctions, but because of the interpretations placed by the courts on this section of the Clayton Act, the restrictions as contained therein have become more or less valueless to labor, and this section is intended by more specific language to overcome the qualifying effects of the decisions of the courts in this respect'. . . ." (H. Rep. 72nd Cong., 1st Sess., pp. 7-8.)

In the case of *Brotherhood of Railroad Trainmen* v. *Peoria, Toledo and Western Railroad* (1944), 321 U. S. 50, the Supreme Court said:

". . . . The latter (Norris-LaGuardia Act) did not entirely abolish judicial power to impose previous restraint in labor controversies. But its prime purpose was to restrict the federal equity power in such matters within the greatly narrower limits than it had come to occupy. It sought to make injunction a last line of defense, available not only after other legally required methods, but after all reasonable methods as well, have been tried and found wanting. This purpose runs throughout the Act's provisions. It is dominant and explicit in § 8. . . ." (Our parentheses.)

The majority opinion holds in effect that Section 9 (f), (g), (h) of the Labor-Management Relations Act, 1947 (Taft-Hartley) (Public Law 101, 80th Congress) excuses the employer from negotiating or arbitrating with his employees as a condition precedent to injunctive relief by reason of the fact that the union, seeking recognition as the bargaining agent, has not complied with the Taft-Hartley Act. I fail to see how the Taft-Hartley Act in any manner amends or nullifies the requirements of the "little" Norris-LaGaurdia Act of Indiana setting forth the conditions precedent to an employer's right to injunctive relief. As far as this statute of Indiana relative to the issuance of injunctions in labor disputes is concerned, it would make no difference whether there was a union or no union in a plant in which an employer seeks injunctive relief in a labor dispute with his employees. In either case the statute places upon the employer a duty of exerting every reasonable effort to settle such dispute by negotiation, mediation, or arbitration, as conditions precedent to his right to injunctive relief. The question of certification or recognition of the union while it is the assigned cause of the strike and work stoppage would have no bearing upon the question of the right of the employer under this Indiana statute to an injunction for alleged individual acts of the various employees.

The complaint in the instant case merely names a large number of individual workmen as defendants, and the judgment of the court merely enjoins these defendants as individuals from engaging in mass picketing . . . , and from committing certain other specified acts, and from otherwise interfering with those who desire to enter the factory. This is clearly a case of a complaint by an employer for injunctive relief against

a large number of his employees as individuals. Upon a basis of the relief sought in this complaint, the question of recognition of the union, while admittedly the cause of the strike, has no material bearing upon the issues formed.

It is true that under the Taft-Hartley Act the union in the instant case by reason of its failure to comply with this Act is deprived of the use of the machinery of the National Labor Relations Board, but I fail to see how the provisions of such Act relieve the employer from complying with the provisions of the Indiana Act relative to the issuance of injunctions in labor disputes by an employer when such employer seeks an injunction under such Act. This Act is firmly established as a legislative policy of this State, and under the provisions of the Indiana law great progress has been made in labor management relations in this State.

In Indiana there exists a Division of Labor which is a governmental agency of the State whose duty it is to promote the voluntary arbitration, mediation, and conciliation of disputes between employers and employees for the purpose of avoiding a strike. Burns' Stat., § 40-2138, 1940 Replacement, 1945 Supplement.

The whole policy of the law of this State is directed toward the peaceful settlement of labor disputes through negotiation, arbitration, and mediation. Injunctions are not prohibited in a proper case where the employer has complied with the provisions of the law, which the employer failed to do in the instant case.

The record shows that mediation was offered to appellee, but was rejected by it. Arbitration was available and the company failed to make any efforts to arbitrate or even negotiate, basing its refusal upon

the fact that the union was not eligible for certification under the Taft-Hartley Act. Instead of making every reasonable effort to settle this dispute by negotiation, arbitration, or mediation, the employer elected to ignore such methods; and in my opinion, the employer thereby lost its legal right under Indiana law to have an injunction issued by the court. The employer refused to meet with the union. The employer had the clear right to have the use and benefit of available governmental machinery under Indiana laws and the opportunity to negotiate and arbitrate the dispute which they did not elect to use. If they desired injunctive relief, it was necessary for them to seek and secure such assistance before they would be entitled to injunctive relief. It is undisputed that the employer has failed to comply with the conditions precedent to the issuance of an injunction in a labor dispute; and, therefore, in my opinion the trial court erred in granting a temporary injunction in favor of appellee and against appellant. In my opinion, the judgment should be reversed for the reasons given herein.

NOTE.—Reported in 77 N. E. 2d 755.