MURRIN ETC. ET AL. *v.* COOK BROS. DAIRY, INC.
[No. 18,779. Filed November 9, 1956.]

*George A. Schock,* of South Bend, *Richard H. Sproull,* of Elkhart, *Edward J. Fillenwarth,* and *Gregg Fillion, Fillenwarth & Hughes,* all of Indianapolis, for appellants.

*Bontrager & Spahn,* and *F. L. Wiltrout,* both of Elkhart, for appellees.

PFAFF, J. This action was brought by appellee to obtain a restraining order, a temporary injunction and a permanent injunction. The trial court granted a temporary injunction and this appeal followed.

The parties concede that the matter involves or grows out of a "labor dispute" as defined by §40-513, Burns' 1952 Replacement:

> "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

The Court found, in part, as follows:

1. That plaintiff is an Indiana corporation, with its principal office and place of business located at No. 1100 Hively Avenue in the city of Elkhart, Indiana, and that at all times under inquiry, plaintiff was and is engaged in the business of processing and distributing various kinds of dairy products, at wholesale and retail, in the city of Elkhart and its environs, and that it had thirteen employees.

2. That the defendants, Chauffeurs, Teamsters and Helpers Local Union 364, and Elkhart Industrial Union Council, C. I. O., are voluntary associations and labor unions; that at all times under inquiry, defendants,

Charles Bartlett and Dominick Simeri, were members of, the defendant William Hansen was a representative of, and the defendant Norman C. Murrin was president of Chauffeurs, Teamsters and Helpers Local Union 364; and that defendant Wayne Stoll was president of Elkhart Industrial Union Council, C. I. O.

3. That commencing with the first part of March, 1955, the defendants, Dominick Simeri and Norman C. Murrin, met on several occasions with the president of plaintiff to discuss the matter of making plaintiff's business a union shop, where all plaintiff's employees would be required to join the Chauffeurs, Teamsters and Helpers Local Union 364; that at a meeting between the parties, the president of plaintiff expressed a willingness to sign a union contract, if said defendants would permit those employees who desired to join to do so, but not force those employees who did not wish to join to become members of the union, that is, to make a contract on an "open shop" basis. At these conferences the president of plaintiff insisted that he would not encourage or discourage the union to the employees and that he would never coerce them to join the union. That prior to April 27, 1955, no employee of plaintiff had asked for union recognition; that there was no labor dispute between plaintiff and any of its employees at all times referred to herein and plaintiff was at peace with its employees; that the plaintiff had performed all obligations imposed upon it by law. That plaintiff refused to send a representative to a meeting with the said union representatives, which had been scheduled for the evening of April 26, 1955, and on April 27, 1955, defendant Dominick Simeri, and others began picketing plaintiff's plant. That defendants William Hansen, Dominick Simeri, Charles Bartlett, Norman C. Murrin and others engaged in picketing plaintiff; that the picket line was maintained for a period of seven weeks

until June 14, 1955, when plaintiff filed its verified complaint for a temporary restraining order, without notice, and asked the Court, after hearing, to grant a permanent injunction. The temporary restraining order was issued.

4. That at the time said picketing began on April 27, 1955, only two of plaintiff's thirteen employees were members of the Chauffeurs, Teamsters and Helpers Local Union 364, and only one, the defendant Charles Bartlett, joined the pickets; that the other member stayed away one day and reported for work on April 28, 1955; that neither the defendant Charles Bartlett nor any other employees of plaintiff had any voice in establishing the picket line; that no meeting of plaintiff's employees had been held to discuss a strike or a picket line at the plaintiff's plant.

5. That the defendant, Wayne Stoll, President of Elkhart Industrial Union Council, C. I. O., consented with Norman C. Murrin to the distribution of the circular identified as Plaintiff's Exhibit 6, which was admitted in evidence and which called attention to the picketing in progress at plaintiff's plant and called on labor to buy milk products of dairies that had signed union contracts; that over one thousand such circulars were circulated.

6. That in addition to picketing plaintiff's plant, the defendants, Norman C. Murrin and Dominick Simeri, caused various pickets to follow the trucks of plaintiff along their route with intent and design of coercing and intimidating plaintiff's customers to cease and desist from purchasing the plaintiff's products; and further caused said pickets to approach some of plaintiff's wholesale customers and attempted to induce such customers to discontinue the use of plaintiff's products, and further caused plaintiff's suppliers to refrain from

furnishing and delivering materials and supplies to plaintiff.

7. That all of the acts committed by the defendants Norman C. Murrin, Dominick Simeri, William Hansen, Wayne Stoll and Charles Bartlett, as found in Findings 3, 5 and 6 herein, were done and performed for the purpose of compelling the plaintiff to coerce its employees to become members of the Chauffeurs, Teamsters and Helpers Local Union 364, and for the further purpose of compelling the plaintiff, against its desire, to sign a union shop contract, under which its employees would be compelled to join Chauffeurs, Teamsters and Helpers Local Union 364 or be discharged.

A temporary injunction was issued enjoining appellant from doing the acts complained of, reading in part as follows:

"1. Maintaining, supporting, directing, controlling or in any other manner being responsible for the maintenance of a picket or pickets at or about plaintiff's principal office and plant at 1100 Hively Avenue, in the City of Elkhart, Elkhart County, State of Indiana, and at or about the premises of any customer of plaintiff, in furtherance of an attempt to coerce plaintiff into requiring its employees to become members of Chauffeurs, Teamsters and Helpers Local Union 364, or in furtherance of its attempt to compel plaintiff, against its desire to sign a union shop contract whereby its employees will be compelled to join the Chauffeurs, Teamsters and Helpers Local Union 364, or be discharged.

"2. Interfering in any manner whatsoever with plaintiff's business, its employees, its suppliers, and its customers, in the furtherance of an attempt to coerce plaintiff into requiring its employees to become members of Chauffeurs, Teamsters and Helpers Local Union 364, or in furtherance of its attempt to compel plaintiff against its desire to sign a union shop contract whereby its employees will be compelled to join the Chauffeurs, Teamsters and Helpers Local Union 364, or be discharged.

"3. Interfering in any manner whatsoever with any of plaintiff's customers or suppliers or attempting to induce any of plaintiff's such customers or suppliers to refrain from doing business with plaintiff, or handling plaintiff's products, in furtherance of an attempt to coerce plaintiff into requiring its employees to become members of Chauffeurs, Teamsters and Helpers Local Union 364, or in furtherance of its attempt to compel plaintiff, against its desire to sign a union shop contract whereby its employees will be compelled to join the Chauffeurs, Teamsters and Helpers Local Union 364, or be discharged;"

As stated by Judge Royse of this court, in *Bartenders, etc. Union* v. *Clark Restaurants* (1951), 122 Ind. App. 165, 102, N. E. 2d 220, transfer denied,—

". . . The injunction did not and could not affect the legal rights of appellant to picket appellee's business for any lawful purpose now or in the future."

Sec. 40-502, Burns' 1952 Replacement reads, in part, as follows:

". . . the public policy of the state is hereby declared as follows:

"Whereas, under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership associations, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective

bargaining or other mutual aid or protection; . . ."

Sec. 40-503, Burns' 1952 Replacement, provides:

"Any undertaking or promise, such as is described in this section, or any other undertaking or promise in conflict with the public policy declared . . . is hereby declared to be contrary to the public policy of the state of Indiana and shall not afford any basis for the granting of legal or equitable relief by any such court, . . ."

In the case of *Roth* v. *Local Union No. 1460 of Retail Clerks Union* (1939), 216 Ind. 363, at page 370, 24 N. E. 2d 280, where the findings of fact were quite analogous to those herein, the Supreme Court, in affirming the issuance of a temporary injunction, said:

". . . The statute here under consideration declares that it is the public policy of this state that the individual unorganized worker shall be free to decline to associate with his fellows and that he shall be free from interference, restraint, or coercion on the part of his employer. This must mean that no labor union may demand that an employer require his employees to join such union, because no employer has the right to require an employee to join or refrain from joining a labor union. Any person or group which undertakes to coerce an employer to do that which is contrary to the express policy of this state thereby undertakes to compel the performance of an unlawful act. The lawful weapon of peaceful picketing may not be utilized to accomplish such an unlawful purpose. It is quite immaterial that the things done to bring about the unlawful purpose were not per se unlawful. This is our interpretation of our statute."

See also *Bartenders, etc. Union* v. *Clark Restaurants, supra; Spickelmier* v. *Chambers* (1943), 113 Ind. App. 470, 47 N. E. 2d 189, transfer denied.

Thus it is apparent that the purpose of the conduct of appellants as found by the Court is contrary to the

express public policy of this state and unlawful, and was conduct which should have been enjoined, if other conditions precedent to the issuance of an injunction existed. Appellants do not contend otherwise in their briefs.

Sec. 40-508, Burns' 1952 Replacement, provides:

"No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

The principal contention presented by appellants is that there was a failure to meet the conditions of this section. This contention is presented in several ways: That it was necessary for appellee to allege in its complaint and prove in court that it had made every reasonable effort to settle the dispute in accordance with the requirements of the statute; that the trial court was required to affirmatively find that such effort had been made; that the finding of the court to the effect that appellee had performed all obligations imposed upon it by law was overcome by the mere specific finding that appellee refused to send a representative to a meeting with the union representatives which had been scheduled for April 26, 1955, and amounted to a finding that the appellee did not make every reasonable effort to settle the dispute; that by reason of such alleged failure to make every reasonable effort the appellee did not come into court with "clean hands"; that if such finding did not amount to a finding that appellee did not make every reasonable effort to settle the dispute, then the court did not affiffirmatively find on that issue and injunctive relief should have been denied for that reason.

"In appeals of this character the court is not concerned with the pleadings and will consider only the evidence which tends to support the judgment. It is not necessary that such a case shall be made as would entitle the plaintiff to relief at all events at the final hearing. It is enough if the evidence shows the case to be a proper one for investigation in a court of equity, and that the facts are such that the thing sought to be enjoined should be prevented until the final determination of the case." *Weist* v. *Dirks* (1939), 215 Ind. 568, 20 N. E. 2d 969.

The special finding of facts must be considered as a whole. One part may be considered in connection with other connected parts, or parts referring to the same transaction, and if taken as a whole the finding legitimately supports the judgement, it will be upheld. All intendments and presumptions are taken in favor of the findings rather than against them. *Kelley, Glover & Vale* v. *Heitman* (1943), 220 Ind. 625, 44 N. E. 2d 981; *National Surety Co.* v. *State* (1914), 181 Ind. 54, 103 N. E. 105; *Guardian Life Ins. Co. of America* v. *Brackett* (1940), 108 Ind. App. 442, 27 N. E. 2d 103; Flanagan, Wiltrout and Hamilton, Indiana Trial and Appellate Practice, §1732, Comment 4.

The findings show that appellee's president met with the appellants, Murrin and Simeri, on several occasions to discuss the matter of making appellee's business a union shop whereby appellee's employees would be required to join the particular union or to be discharged; that appellee's president expressed the willingness to sign a contract provided that he was not required to coerce appellee's employees to join the union. Appellee refused to send a representative to yet another meeting and picketing began the following morning. All acts of appellants were directed toward requiring appellee to commit unlawful acts of coercion. In our opinion the findings read as a whole show that

appellee made every reasonable effort to settle the dispute by negotiations. The law did not require appellee to further negotiate, mediate or arbitrate as to whether or not it would be required to commit an unlawful act. *Fulford* v. *Smith Cabinet Mfg. Co.* (1948), 118 Ind. App. 326, 77 N. E. 2d 755, transfer denied.

A careful reading of the evidence discloses that the findings of the Court are supported thereby.

We also note the following language in *Bartenders, etc. Union* v. *Clark Restaurants, supra:*

> "In our opinion the record herein was replete with evidence which would justify the trial court in finding appellants were demanding that appellee force its employees to join their union. It is immaterial whether appellants actually threatened the use of force; the mere fact that they requested appellee to do that which the law forbids was wrong. Significantly, when appellee refused to confer with them in reference to their unlawful demands, they resorted to that form of 'economic coercion' known as picketing. This was sufficient to justify the trial court's issuance of the permanent injunction. *Roth* v. *Local Union No. 1460 of Retail Clerks Union et al., supra.*"

Appellants also contend that the facts in the instant case are similar to those set forth in *Spickelmier et al* v. *Chambers, supra,* and, therefore, injunctive relief should have been denied as was done in that case. That case is readily distinguishable. The evidence there did "not show that the picketing was conducted for such an unlawful purpose as to taint and render unlawful the acts done in furtherance thereof."

A separate contention is made as follows in appellants' original brief:

> "The trial court found that the defendants, Wayne Stoll, individually, and as president of Elkhart Industrial Union Council C. I. O. should be enjoined along with the other named appellants, but

such finding is not supported by any evidence and, therefore, is not sustained by sufficient evidence;".

No particular finding or any part thereof is pointed out by the appellants and our search reveals no such finding. From appellants' reply brief we gather  that what they are actually claiming is that the judgment does not conform to the findings of fact and conclusions of law so far as Wayne Stoll is concerned, although the contention is not so worded, and there was no motion to modify the judgment. Alleged errors are waived by failure to present them in appellants' original brief. Rule 2-17 (f), Rules of the Supreme Court of Indiana. See also *Gates* v. *Baltimore, etc. R. Co.* (1900), 154 Ind. 338, 56 N. E. 722.

We find no reversible error. Judgment affirmed. Kendall, C. J., Crumpacker, P. J., Royse, J. concur; Bowen, J. dissents; Kelley, J. not participating.

NOTE.—Reported in 138 N. E. 2d 907.