## FAIR SHARE ORGANIZATION, INC. *v.* MITNICK, D/B/A CENTRAL FOURTH STREET DRUGS.

[No. 19,741. Filed March 19, 1963. Rehearing denied April 4, 1963. Transfer denied June 18, 1963, with opinion in 191 N. E. 2d 100.]

*F. L. Anderson, Jr., Anderson, Hicks & Anderson* and *Hilbert L. Bradley,* all of Gary, for appellant.

*Raymond M. Fox, Jr.,* of Michigan City and *Link, Link & Franceschini,* of LaPorte, for appellee.

PFAFF, J.—This action was brought by the appellee to obtain a temporary injunction and a permanent injunction. The trial court granted a temporary injunction and upon the appellee's request it entered Special Findings of Fact and Conclusions of Law. This appeal followed.

"In appeals of this character the court is not concerned with the pleadings and will consider only the evidence which tends to support the judgment. It is not necessary that such a case shall be made as would entitle the plaintiff to relief at all events at the final hearing. It is enough if the evidence shows the case to be a proper one for investigation in a court of equity and that the facts are such that the thing sought to be enjoined shall be prevented until the final determination of the case. *Tuf-Tread Corporation et al* v. *Kilborn* (1930), 202, Ind. 154, 172 N. E. 353." *Weist* v. *Dicks* (1939), 215 Ind. 568, 20 N. E. 2d 969.

The Special Findings of Fact indicate that the appellee operated a retail drug store at 327 Franklin Street, Michigan City, Indiana, in which he employed four clerks and a Negro janitor. Approximately 15 percent of appellee's business was Negro trade. The appellant is a non-profit organization existing under the laws of the state of Indiana for the following purposes: To awaken the Negro politically, economically, socially and civilly; to educate the Negro to vote intelligently and to foster and promote qualified candidates for positions irrespective of their party affiliation; to educate the Negro not to spend money where he cannot work; to cooperate wholeheartedly with every other organization which is working for the alleviation of race discrimination; and to employ all legal means necessary to accomplish these purposes.

The Findings further reveal that on September 27, 1962 the appellant, through its agents and representatives, made demand upon the appellee to employ a Negro as a clerk in his drug store even if appellee had to discharge a white clerk to do so. The appellant offered no specific persons for such employment. The appellee had no need for an additional clerk or clerks at this time; therefore, he refused the appellant's demand to hire a Negro clerk. The appellee did, however, offer to employ a Negro pharmacist immediately if one were available. No member of the Negro race applied for a position with the appellee as a clerk in said drug store prior to the time of the demand made by the appellant on the appellee, and no Negro has applied for a position as a clerk since that time.

The Special Findings also state that beginning September 29, 1961, until the filing of this temporary

injunction, the appellant picketed the appellee's place of business for purpose of coercing the appellee to employ a Negro as a clerk. The picketing was carried on by using from two to eight pickets; the number varied from time to time. In addition to these pickets, at different times, there were large numbers of the Negro race congregating near appellee's place of business. The appellant organization conducted the picketing by displaying and carrying some signs which were misleading and false in fact as follows:

"This Drug Store Discriminates Against Negroes."

"No Negro Clerk or Salesman in Michigan City."

"Help Us Fight Communism."

"This Store Does Not Hire Negro Help."

Further findings are to the effect that the purpose of the picketing was to intimidate customers from utilizing the services of appellee's business and the appellee suffered a loss in the volume of business in the sum of $5000.00 prior to the granting of the temporary injunction.

The trial court also found that the appellee offered to negotiate the differences between the parties but the appellant refused.

We think that the above set out Special Findings of Fact are supported by evidence and are not contrary to law.

In addition, the trial court specially found that no labor dispute exists between the appellee and his employees and that no labor dispute exists between the appellee and appellant. The first three points in the appellant's argument challenge this particular finding. Appellant contends that this is a labor dispute and that the Appellate Court is the proper court for review.

In determining its jurisdiction to hear this appeal the Appellate Court is bound by the Indiana Supreme Court decision, *Fair Share Organization* v. *Kroger Company* (1960), 240 Ind. 461, 165 N. E. 2d 606, in which that court followed the United States Supreme Court ruling in *New Negro Alliance et al.* v. *Sanitary Grocery, Inc.* (1938), 303 U. S. 552. These cases are almost identical with the case before us. In *Fair Share Organization* v. *Kroger Company, supra,* the Circuit Court granted a temporary injunction against picketing which the court found was designed to force the appellee to change its employment practices and to engage in selective hiring of Negro employees based on the proportion of Negro customers who patronize its store. The appellant wanted these changes even if such modification required appellee to discharge or transfer competent white employees and replace them with Negroes. Appellant brought its appeal to this court and this court transferred it to the Supreme Court which court held that the action grew out of a labor dispute and that the Appellate Court was the proper court for review. The case then came back to the Appellate Court, *Fair Share Organization* v. *Kroger Company* (1961), 132 Ind. App. 160, 176 N. E. 2d 205; however, by this time the appellee had dismissed the action. This court held the appeal to be moot.

Once an action granting an injunction is held to have grown out of a labor dispute the determination that this court had jurisdiction must follow. The Indiana Legislature has enacted a law modeled on the federal anti-injunction legislation, the Norris-LaGuardia Act, Act of March 23, 1932, ch. 90, 47 Stat. 70, 29 U. S. C., §101. This statute provides rules for the granting of an injunc-

tion in a labor dispute. See §40-501 *et seq.*, Burns' 1952 Replacement. Since this action grew out of a labor dispute, the statute must be applied. The Appellate Court is given jurisdiction to review the granting and denial of such injunctions in one of the sections of the Indiana statute, §40-510, Burns' 1952 Replacement:

"Whenever any court of the state of Indiana shall issue or deny any temporary injunction in a case involving or growing out of a labor dispute, the court shall, upon the request of any party to the proceedings and on his filing the usual bond for cost, forthwith certify as in ordinary cases the record of the case to the Appellate Court for its review. Upon the filing of such records in the Appellate Court, the appeal shall be heard and the temporary injunction order affirmed, modified, or set aside with the greatest possible expedition, giving the proceedings precedence over all other matters except older matters of the same character."

The authorities and the statutes thus indicate that the appellant is correct as to both of its preliminary contentions, that is: (1) This action is one which has grown out of a labor dispute; and (2) the Indiana Appellate Court has statutory jurisdiction of appeals when the trial court grants an injunction in a labor dispute.

As its fifth and sixth points of argument, the appellant alleges that the evidence shows that the picketing was protected free speech and assembly under the Fourteenth Amendment of the United States Constitution and Article One Sections Nine and Thirty-One of the Indiana Constitution. The appellee replies that he has no quarrel with the contention that the general rule is that picketing is protected free speech, but he further states that this protected right to

picket cannot be used for unlawful purposes nor can it be carried on by unlawful means.

A review of Indiana decisions reveals that the Indiana courts have repeatedly held that if the purpose of picketing is unlawful then the picketing itself is unlawful and it may be enjoined. It is not immune from injunctive relief under the terms of the Indiana Anti-Injunction Statute. *Roth* v. *Local Union No. 1460 of Retail Clerks Union* (1939), 216 Ind. 363, 24 N. E. 2d 280; *Fulford* v. *Smith Cabinet Mfg. Co.* (1948), 118 Ind. App. 326, 77 N. E. 2d 755; *Bartenders, etc. Union* v. *Clark Restaurants* (1951), 122 Ind. App. 165, 102 N. E. 2d 220; *Murrin, etc. et al.* v. *Cook Bros. Dairy, Inc.* (1956), 127 Ind. App. 23, 138 N. E. 2d 907.

The leading case upon which all the others rely is *Roth* v. *Local Union No. 1460 of Retail Clerks Union, supra.* In that case the court stated that the appellant had performed all obligations imposed upon him by law, and he was at peace with his employees. None of them belonged to or wanted to become a member of the picketing union. The object of the picketing was to compel the appellant, against his desire, to sign a closed shop contract under the terms of which his employees would be compelled to join the union against their will or be discharged. Since forcing a worker into a union is against the positive law, the court affirmed the granting of the temporary injunction; however, they did make some modifications which are not relative here. In regard to our problem the court said at p. 368:

> "Picketing becomes unlawful when either the object thereof or the means used is unlawful. Thus picketing for an unlawful purpose will taint and render unlawful acts done in furtherance thereof which would have been lawful if done for

a legitimate purpose; and, conversely, a lawful objective will not justify the employment of means which are themselves unlawful. *Local 26, Natl. Bro. of Op. Potters* v. *City of Kokomo* (1937), 211 Ind. 72, 83, 5 N. E. (2d) 624; *McKay v. Retail Automobile Salesman's Local Union No. 1067* (1939), 89 P. 2d 426, 90 P. 2d 113."

Decisions similar to those which enjoined picketing in Indiana have been handed down in other states and have reached the United States Supreme Court. In *Teamsters Union* v. *Vogt, Inc.* (1957), 354 U. S. 284, 293, Justice Frankfurter in his opinion for the court reviews these cases in detail and concludes:

"This series of cases, then established a broad field in which a state, in enjoining some public policy, whether of its criminal or its civil law and whether it is announced by its legislature or its court, could constitutionally enjoin peaceful picketing aimed at preventing effectuation of the policy."

The appellee urges that the illegal or unlawful object of the picketing in the case before us is discrimination in employment in violation of the public policy of Indiana as set out in the Fair Employment Practices Act, §40-2308, Burns' 1952 Replacement, (Supp):

"It is the public policy of the state of Indiana to encourage all of its citizens to engage in gainful employment and to encourage the full utilization of the productive resources of the state to the benefit of the state, the family and to all the people of the state.

"The practice of denying employment to, and discriminating in employment against, properly qualified persons by reason of the race, creed, color, national origin or ancestry of such person is contrary to the principles of freedom and equality of opportunity and is a burden to the objectives of the public policy of this state. The

promotion of equal opportunity in employment without regard to race, creed, color, national origin or ancestry through reasonable methods that do not create that which it seeks to enjoin is the objectives and purposes of this act."

The appellee charges that the appellant is attempting to coerce him to violate this statute by discharging white employees because of their race. He alleges that he does not need any new clerks and the appellant demands that a Negro be hired.

A similar factual situation faced the California Supreme Court in *Hughes* v. *Superior Court* (1948), 32 Cal. 2d 850, 198 P. 2d 885. The demand in that case was aimed at proportional hiring and there was no demand for the discharge of white employees. The Supreme Court held that there was no difference between a judicial and a legislative policy. They followed the policy established in *James* v. *Marinship* (1944), 25 Cal. 2d 721, 155 P. 2d 329, a case in which the court struck down an attempt to establish simultaneously a closed shop and a closed union when the union did not admit Negroes.

There are two separate dissenting opinions in the *Hughes* v. *Superior Court, supra,* decision. One of these dissents is written by one of our country's outstanding jurists, Justice Traynor, and he clearly indicates that he would change his decision when faced with the situation before this court:

"The picketing in this case is directed at persuading Lucky to take action that it may lawfully take on its own initiative. No law prohibits Lucky from discriminating in favor of or against Negroes. It may legally adopt a policy or proportionate hiring. The picketing confronts Lucky with the choice of adopting a policy that is not illegal in itself or risking the loss of patronage that may result from the picketing. Had California adopted a fair

employment practices act that prohibited consideration of the race of applicants for jobs, it might be said that the demand for proportional hiring would be a demand that Lucky violate the law. Neither the Legislature nor the people have adopted such a statute, and I find no implication in the majority opinion that its equivalent exists under the common law of this state."

After the Supreme Court of California handed down its decision in *Hughes* v. *Superior Court, supra,* the case was taken before the Supreme Court of the United States, *Hughes* v. *Superior Court* (1950), 339 U. S. 460, 461. Justice Frankfurter wrote the opinion for the court and he summed up the issues in the following language:

"Does the Fourteenth Amendment of the Constitution bar a State from use of the injunction to prohibit picketing of a place of business solely in order to secure compliance with a demand that its employees be in proportion to the racial origin of its then customers?"

The court held that the Fourteenth Amendment did not bar this California injunction, and in answer to the issue on p. 464 it said:

"To deny to California the right to ban picketing in the circumstances of this case would mean that there could be no prohibition of the pressure of picketing to secure proportional employment on ancestral grounds of Hungarians in Cleveland, of Poles in Buffalo, of Germans in Milwaukee, of Portuguese in New Bedford, of Mexicans in San Antonio, of the numerous minority groups in New York, and so on through the whole gamut of racial and religious concentrations in various cities. States may well believe that such constitutional sheltering would inevitably encourage use of picketing to compel employment on the basis of racial discrimination. In disallowing such picketing States may act under the belief that otherwise community tensions and conflicts

would be exacerbated. The differences in cultural traditions instead of adding flavor and variety to our common citizenry might well be hardened into hostilities by leave of law. The Constitution does not demand that the element of communication in picketing prevail over the mischief furthered by its use in these situations."

The cases in this state clearly indicate that an injunction is proper, in spite of the Anti-Injunction Statute, when picketing is carried on for an illegal purpose. This court holds that picketing to obtain replacement of white employees by Negroes or any other attempt to obtain racial discrimination in employment is a violation of the public policy of this state as set out in the Fair Employment Practices Act, §40-2308, Burns' 1952 Replacement, (Supp); therefore, such picketing has an illegal object or purpose.

As the fourth point in its argument appellant contends that the statutory conditions precedent to the granting of injunctive relief have not been complied with by the appellee, §40-501 *et seq.*, Burns' 1952 Replacement. This point was at issue in *Murrin, etc. et al.* v. *Cook Bros. Dairy, Inc., supra*. In that case we held that if taken as a whole the findings legitimately support the judgment, then the decree, which grants the temporary injunction, should be upheld. The reason is that the evidence must merely show that the case is a proper one for investigation not that the plaintiff will *necessarily* be entitled to relief. The Special Findings of Fact indicate that the appellant attempted to force the appellee to do an act which is contrary to legislative public policy. The findings also show that the appellee was willing to negotiate. The law does not require more than this; the appellee will not be penalized if he fails to follow extensive legal

procedures when he is coerced by means of picketing to violate the public policy of the state of Indiana.

The appellant further urges that no peace officer was made a party as required by §40-507 (e), Burns' 1952 Replacement, and as a result the lower court would not have jurisdiction. In *Weist* v. *Dirks* (1939), 215 Ind. 568, 571, 20 N. E. 2d 969, our Supreme Court said:

> "In the latter respect, however, it is noted that there was no charge of the commission of any acts of violence or trespass against which a policeman or peace officer has power or authority to protect the plaintiff's property, and in such case the statute must be construed as not requiring any showing or finding as to the ability or willingness of a public officer to furnish adequate protection, or as requiring that the officer should be made a party, since there is no necessity for inquiry as to whether such officer is willing or able to protect the plaintiff's property."

Thus, this court holds: (1) It has jurisdiction to hear this appeal, because the Supreme Court of Indiana has declared that a dispute arising from picketing to obtain employment of a member of a particular race is a "labor dispute"; (2) picketing of this nature can properly be enjoined because its object is contrary to a specific policy established by statute; and (3) an injunction can be granted even though every detail of the Anti-Injunction Act has not been technically followed when there is substantial compliance with the statute and the picketing is designed to coerce another to commit acts which violate the clear public policy of the state. The appellant, therefore, has failed to establish error by the record to obtain reversal of the decree below, and it is unnecessary to consider the appellee's conten-

tion that the picketing was carried on in an unlawful manner.

Judgment affirmed.

Mote, P. J., and Hunter, J., concur.

Kelley, J., not participating.

NOTE.—Reported in 188 N. E. 2d 840. Transfer denied 191 N. E. 2d 100.