**YAKUMITHIS et, Plaintiffs, v. VENDING MACHINE SERVICE EMPLOYEES LOCAL UNION 410-T, Defendants.**

Common Pleas Court, Lucas County.

No. 175936.   Decided April 17, 1952.

Dan H. McCullough, Merritt W. Green, Toledo, for plaintiff.
Edwin J. Lynch, Moe L. Okum, Toledo, for defendants.

### OPINION

By HACKETT, J.

I think the evidence in this case at this point shows prima facie the existence of an unlawful conspiracy between this union and the Tristate Vendors Association.

Therefore, anything done, innocent or otherwise, in furtherance of that unlawful conspiracy, is itself unlawful and may be received in evidence in furtherance of the conspiracy.

The evidence in this case prima facie establishes that there is no legitimate trade dispute between the plaintiff and the union, or any difficulty.

There being no legitimate trade dispute, no picketing, whether it be by violence or peaceful, is permissible under the established law of Ohio.

The established law of Ohio—this case is entitled Crosby, appellant v. Rath, et al.—that case was decided by Judge Frank Lausche while he was a member of the Common Pleas Court of Cuyahoga County, and while his decision in a sense did violence to the opinions of persons in labor law at that time, all courts are compelled to respect it and honor it until it is reversed. It stands unreversed.

In that case the evidence disclosed that plaintiff's employees were not members of the union or represented thereby  It disclosed that they did not desire such membership; that each employee was serving under a certain renewable contract, and so forth—it isn't necessary to state all the facts in detail—there was picketing and calling of vile names and obsence names, and so forth, and violence.

The defendant unions disclaimed responsibility for all of these things and insisted that the contracts existing between the plaintiff and defendants were not valid.

The Court of Common Pleas rendered a verdict for the plaintiff. The verdict rendered was that the contracts were valid and that no legitimate trade dispute was involved, and enjoined the defendants from picketing or boycotting the plaintiff's restaurant and from interfering with the operation of the plaintiff's business.

That case was taken by the union to the Court of Appeals of Cuyahoga County on questions of law and fact, and the decree of the Court of Appeals was the same as the decree of the Common Pleas Court except that the court permitted picketing and boycotting.

The case was then taken to the Supreme Court of the State of Ohio, and in that case the Supreme Court of Ohio said that the controlling question in the case was whether the evidence disclosed the existence of a legitimate trade dispute. and then the court said that "here the difficulty simplified by the fact that both the plaintiff and the defendants rely upon the decision of this court in the case of **La France Electrical Construction & Supply Company v. The International Brotherhood of Electrical Workers, 108 Oh St, page 61.**"

It so happens that this court in practicing law wrote the briefs in the La France case and argued the law in the Supreme Court of Ohio.

In that case the Supreme Court says, "This court gave careful consideration to the principles of law relating to the subject of trade disputes, and affirmed the decision of the lower courts permitting picketing in the employer's plant, but in the opinion it is clearly pointed out that 'Upon the record with regard to this point there can be little doubt that a legitimate trade dispute existed in this case.' "

That is where the La France case differs from the case at bar. In that case they said that there was a trade dispute, "in which former employees of the plaintiff company were seeking to secure the right to work with the company under terms of employment different from those which their employer was at the time requiring. That being the case, the methods open to use in a legitimate trade dispute were open to strikers here."

The court then goes on to mention other cases and, without taking too much time, the Supreme Court of Ohio cites two recent decisions: Meadowmoor Dairies, Inc. v. Milk Wagon Drivers Union, 21 N. E. 2d 308 and Roth v. Local Union, 24 N. E. 2d 280.

The court says that in the Roth case—one paragraph of the syllabus reads in part as follows: "The right to contract, the right to do business and the right to labor freely and without restraint are all constitutional rights equally sacred, and the privilege of free speech cannot be used to the exclusion of other constitutional rights nor as an excuse for unlawful activities in interference with another's business."

Apparently the court that had decided the Nicholson case in Akron had not seen that decision.

So, in the Crosby case the decree of the Court of Appeals was set aside by the Supreme Court of Ohio and the decision of the Common Pleas Court in that case was affirmed.

Now in that case, dissenting opinions were filed. Judge Myers filed a separate concurring opinion. Judge Day dissented. Judge Zimmerman wrote a lengthy, very lengthy dissenting opinion, and even in his dissenting opinion he concludes with this very significant paragraph—I quote from this dissenting opinion; "Furthermore" Justice Zimmerman says, "The representations of the defendants and the conclusion of the Court of Appeals as to the object of the 'peaceful picketing' cannot be ignored. If it were clear that the dominant motive was to ruin Mrs. Crosby's business from a purely evil incentive rather than to promote the interests of union labor, a different attitude would be in order, for"— quoting again—"When the purpose for picketing is to injure or destroy a business rather than to further the common interests of the worker, it is unlawful interference with the property rights of the employer and should be enjoined."

With that language Justice Zimmerman concludes his dissenting opinion.

Now, this case was appealed by the unions to the Supreme Court of the United States. The Supreme Court of the United States refused to issue a writ of certiorari, thereby affirming

the majority opinion and the decision of the present case stands unreversed and unmodified, whether we like it or not.

Subsequently, Crosby v. Rath was appealed to the Ohio Supreme Court and the court refused to review it on a petition as of right in 139 Oh St 151, 22 O. O. 173. Certiorari was denied in Rath v. Crosby, 316 U. S. 687 on May 25, 1942.

Different rulings are made in those union cases before the National Labor Relations Board and in this case the court has held that because of the issues here joined, a different action is properly cognizable by this court.

Now, there are many unusual things that have happened in this case. Here is a charge against a labor union, the first charge of such character that has ever come to my notice—perhaps there have been others—I think there were out in California, years ago—but I don't know of any charge that has been made in Lucas County, at least I am not aware of it—in which it is alleged that an organization functioning as a union is not a union but in fact a racket.

Certainly it is the first time that in any such case two members of organized labor of prominence and long standing such as Franz Berlacher and Harry Card have come in and testified that in their opinion this was not a legitimate labor union.

I think the evidence up to this point shows prima facie at least that this union was not organized primarily for the benefit of its members; I think it was organized primarily for the benefit of the association, and if its object, as the evidence tends to show, was to control the juke box industry in the county, it was organized for an unlawful purpose; it was unlawful and has no standing in court.

There is evidence in this court by the defendant Coy which he gave unwillingly, that this 410 T has nothing in the nature of a document which could by the longest stretch of the imagination be rightfully called a charter.

There is evidence in this case by men who were solicited to join this association that it was part and parcel of the union.

There is evidence in this case from which any logical mind might conclude that this union was a papier mache shield behind which this association worked to compel people using juke boxes to throw out those boxes against their will and take the boxes okayed by the association.

On the question of whether or not this violates any provision of the Constitution on free speech, the court calls attention to the case of Snapp v. White, 17 O. O. 186, decided by the Court of Hamilton County,—

"Under the rule announced in the case of Crosby v. Rath,

* * * peaceful bannering or picketing should be enjoined where there is no trade dispute, strike or lockout between employer and employee, and there is no dispute as to wages, hours or shop conditions."

In other words, no picketing can be lawful unless it is established first by the evidence that a legitimate trade dispute exists.

As to the right of free speech the court in the Roth case calls attention to the well known principle that "The right of free speech is not superior to the liberty to conduct one's business as one sees fit, without violating any statute or ordinance." And that while the court did not say so, this court says that it is well remembered that these rights, constitutional rights are reciprocal rights; it cannot be said that one group of people has them and another group doesn't have them.

Each citizen regardless of race, class or religion has the same right to protection under the same principles of the Constitution of the United States and of the State of Ohio.

The right to contract, the right to do business and the right to labor freely and without restraint are all constitutional rights equally secured and the privilege of free speech cannot be used to the exclusion of other constitutional rights. nor, as an excuse for unlawful activities in interference in another's business.

Our Ohio Constitution says in its Bill of Rights the following: **Article 1, Section 1**—"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

"**Article I, Section 11**: Every citizen may freely speak, write or publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press "

The court in the Snapp v. White case then says: "Bearing in mind the foregoing constitutional rights, the rationale of the majority opinion in the Crosby case either is that the right of free speech is not superior to the right of liberty secured by **Article 1, Section 1, of the Constitution,** or that peaceful bannering and picketing, in the absence of a labor dispute between the employer and his employees, are unlawful activities in interference with another's business."

And then that court says, as this branch of the court says:

"As the rule of law announced by the majority opinion in the Crosby case is binding upon this trial court, it is unneces-

sary to consider either the opinion of Judge Schneider in Scott Burr Stores Corp. v. Specter" or their own decision, and so forth, and I say for that reason it is unnecessary for this court to consider these cases which counsel for the defendants have cited contrary to the rule of law in the Crosby v. Rath case laid down by the Supreme Court of Ohio, and affirmed inferentially by the Supreme Court of the United States, and until it is changed it is the duty of any trial court to follow that last authority.

In the case of Snapp v. White, the court further says that. "Having reached the conclusion that the Crosby case is determinative of the instant case, nevertheless there still remains for consideration the question whether any of the provisions of the Constitution of the United States or decisions of the Supreme Court of the United States are in conflict with the rule announced by the majority opinion of our State Supreme Court in said Crosby case.

"Article I of the Amendments to the Constitution of the United States provides that:

" 'Congress shall make no laws * * * abridging the freedom of speech or of the press.'

"Article V of such Amendments provides:

" 'No person may be deprived of life, liberty, or property, without due process of law.' "

Article XIV of said Amendments provides:

"Nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

In 1925 the Supreme Court of the United States in New York v. Gitlow, 268 U. S., 652, expanded the meaning of the word "liberty" as used in the due process clause of the fifth and fourteenth Amendments to the Federal Constitution. Speaking through Mr. Justice Sanford the court said:

"For present purposes, we may and do assume that freedom of speech and of the press—which are protected by the first amendment from abridgment by Congress—are among the fundamental personal rights and 'liberties' protected by the due process clause of the fourteenth amendment from impairment by the states."

The last similar expression of the Supreme Court is through Mr. Justice Stone in the case of Hague, et al. v. Committee for Industrial Organization, et al., decided by the Supreme Court on June 5, 1939, wherein he said:

"It has been explicitly and repeatedly affirmed by this court, without a dissenting voice, that freedom of speech and of assembly for any lawful purpose are rights of personal liberty

secured to all persons, without regard to citizenship, by the due process clause of the fourteenth amendment."

See also article by Charles Warren, 39 Harvard Law Review, 431.

Except the case of Senn v. Tile Layers Union, 301 U. S. 468. no decision of the Supreme Court of the United States has been referred to bearing on the question of any conflict between the right of an employer to carry on his business as he sees fit and the right of labor unions to "banner" the place of business of such employer in an effort to bring about the employment of union labor by such employer. That case, far from assisting defendants in the case at bar, expressly determines that what constitutes a "labor dispute" is a question of state law. A careful reading of the opinion of Mr. Justice Brandeis in that case leads to the conclusion that he would not hold that the right of free speech in a case where there is no trade dispute between an employer and his employees is superior to the right of the employer to conduct his business as he sees fit, as long as it is conducted in a lawful manner.

In Lovell v. City of Griffin, 303 U. S. 444, at page 452, Mr. Chief Justice Hughes, in speaking of freedom of speech, said:

"The press in its historical connotation comprehends every sort of publication which affords a vehicle of information and opinion."

All the recent famous, well known decisions upon the question of liberty of speech or freedom of the press are cases in which the right of free speech or assembly for expression of opinion were solely involved. In none of said cases was there involved any question as to any conflict between such rights and the rights of liberty or property protected by the due process clauses of the fifth and fourteenth amendments to the Federal Constitution.

* * * "From a careful analysis of the decisions of the Supreme Court of the United States, and after fullest consideration, we can find nothing in the provisions of the Federal Constitution or in the decisions of the Supreme Court of the United States inconsistent with the conclusion reached by the majority of the Supreme Court of Ohio in the Crosby case

It follows from the foregoing that in our opinion the motion for a temporary injunction against bannering in the case at bar should be granted."

In the state of the proof this court would be remiss in its duty if it longer allowed those pickets to remain in front of that establishment.

An order will be made at this time granting a temporary injunction against all forms of picketing, peaceful or other-

wise, in front of 901 Monroe Street, and that that injunction will be in effect forthwith upon the giving of a bond in the sum of $200.00.